CONCERNED CITIZENS OF STERLING, INC., ET AL. *v.*
CONNECTICUT SITING COUNCIL ET AL.
(13920)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued May 4—decision released June 26, 1990

*Kathleen Eldergill,* for the appellants (plaintiffs).

*Phyllis E. Lemell,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (named defendant).

*Alan M. Kosloff,* with whom, on the brief, was *Suzanne M. Batchelor,* for the appellee (defendant Exeter Energy Limited Partnership).

PETERS, C. J. This administrative appeal principally challenges the statutory and constitutional propriety of the procedures underlying the decision of the defendant Connecticut Siting Council (Council) to grant a certificate of environmental compatibility and public need to the defendant Exeter Energy Limited Partnership

(Exeter).[1] The trial court, after a hearing, rejected the plaintiffs'[2] substantive, procedural, constitutional and evidentiary challenges to the Council's decision and dismissed the plaintiffs' appeal. The plaintiffs filed a further appeal to the Appellate Court, which we transferred to this court in accordance with Practice Book § 4023. We affirm the trial court's dismissal of the plaintiffs' appeal.

The essential facts are undisputed. Exeter proposes to build a plant that will burn waste tires in order to generate electricity and a number of other marketable byproducts. The department of public utility control has approved a twenty-five year contract for the sale of the electricity to Connecticut Light and Power Company. In accordance with General Statutes §§ 16-50k and 16-50p, Exeter applied to the Council for a certificate of environmental compatibility and public need to affirm the propriety of the proposed location of Exeter's plant in Sterling.

Exeter applied for certification on July 31, 1987, and gave public notice of its application in the Norwich Bulletin on July 30 and 31, 1987. The Norwich Bulletin is a newspaper of general circulation in the municipality of Sterling, where the facility is proposed to be

---

[1] Other defendants who filed answers in the Superior Court are Town of Sterling, Town of Plainfield, Joseph D. Taverna and Kenneth Rahn. The remaining defendants, Northeast Utilities, Connecticut Light and Power Company, Philip M. Small, Robert P. Jordan, Dennis Duprey, Foster Country Club and James Curry, were defaulted at trial, either for failure to file an appearance or to file an answer.

[2] The plaintiffs are Concerned Citizens of Sterling, Inc., Paul Cady, Curt Nelson, President, the Thames Valley Chapter of Trout Unlimited, Rhode Island State Representative Bradford Gorham, Rhode Island State Senator Leo Blais, Mike Benoit, Brett Stein, Gerald Kupperberg, M.D., Ralph B. McDougald, Philip H. Croome, Paul Murphy, Peter Carlson, Vice President, Stop I-84, Inc., and the City of Providence Water Supply Board. All the plaintiffs, with the exceptions of Concerned Citizens of Sterling, Inc., Cady and Nelson, are Rhode Island residents or agencies.

located. Exeter served a copy of its application on each person, agency, commission, and municipal body specified in General Statutes § 16-50*l* (b). The Norwich Bulletin published notices on September 15 and 30, 1987, that the Council had scheduled a public hearing on Exeter's application for November 18, 1987. The Council provided mailed notice of the public hearing to those listed in § 16-50*l*. Public hearings were held in Sterling on November 18 and 19, 1987. Additional notices of subsequent public hearings, held on December 23, 1987, and February 9, 1988, were published in the Norwich Bulletin on December 2, 1987, and in the Providence Journal on December 7, 1987.

The location of Exeter's proposed facility in Sterling is approximately two miles from the Rhode Island border, and about five miles from the Scituate Reservoir watershed, which provides water for 65 percent of the population of Rhode Island. A number of Rhode Island residents, including some of the present plaintiffs, were allowed to intervene and ultimately were accorded party status.

Although some of the plaintiffs requested additional time to prepare and to be heard, the Council denied all requests for further hearings beyond February 9, 1988, and refused to defer its announced schedule for its decision on the application. The Council's denial of further continuances was premised in part on its statutory obligation to rule on Exeter's application by May, 1988.

The Council issued Exeter the certificate that it sought on May 6, 1988. The Council made extensive findings of fact to support its conclusions that there was a public need for the electricity that would be produced by the facility and that the site proposed for the facility would not have a significant deleterious effect on the health and safety of Connecticut and Rhode

Island residents. In summarizing its environmental findings, the Council stated that "the effects associated with the construction and operation of the facility, including effects on the natural environment; ecological balance; public health and safety; scenic; historic and recreation values; forests and parks; air and water purity; and fish and wildlife are not significant either alone or cumulatively with other effects, are not in conflict with the policies of the state concerning such effects, and not sufficient reason to deny the application, and therefore, the Council will issue a Certificate for the Exeter waste tires to energy facility."

The plaintiffs' administrative appeal to the Superior Court mounted a broad gauged attack on the Council's decision in favor of Exeter. The trial court, despite expressed reservations about whether some of the plaintiffs had demonstrated the prerequisite aggrievement to pursue an administrative appeal, considered all of the issues on their merits and ruled in favor of the defendants. It concluded that the voluminous record of the proceedings before the Council contained substantial evidence to support the Council's detailed findings and opinion. It rejected the plaintiffs' statutory and constitutional contentions about the adequacy of the notices published with regard to Exeter's application. Finally, it determined that the Council had not substantially impaired or prejudiced the plaintiffs' rights to cross-examine adverse witnesses or challenge expert findings. The trial court accordingly dismissed the plaintiffs' appeal.

In their present appeal, the plaintiffs have pursued four issues. In addition to their disagreement with the trial court's reservations about the aggrievement of some of the plaintiffs, they maintain that the trial court should have found that the proceedings before the Council were fatally flawed in three respects: (1) noncompliance with the statutory notice of hearing require-

ments prescribed by General Statutes §§ 16-50*l*, 16-50m and 4-177; (2) violation of their constitutional rights to procedural due process because of inadequate notice, denial of continuances, and impaired opportunity to participate in the hearing process; and (3) improper reliance by the Council on expert findings not subjected to challenge by cross-examination. We decline to address the issue of aggrievement[3] and conclude, on the merits of the three remaining issues, that the judgment of the trial court should be sustained.

I

In their claim of statutory impropriety, the plaintiffs maintain that the notice published by the defendants failed to comply with the requirements of General Statutes §§ 16-50*l*, 16-50m, and 4-177[4] and therefore

---

[3] Several plaintiffs had the necessary statutory aggrievement to raise, on the merits, all the issues that are presently before us. The trial court held that "a number of plaintiffs, including the Concerned Citizens of Sterling, Inc. and the Providence Water Supply Board, filed verified pleadings with the Council" that entitled them, as intervenors, to raise the environmental issues before the court. See General Statutes § 22a-19; *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250–51, 470 A.2d 1214 (1984). The defendants have not challenged that holding or the environmental nature of the issues that we must decide. We need not resolve in this instance, therefore, whether those plaintiffs who sought party status by sending written requests to the Council met the statutory definition of aggrievement.

[4] General Statutes § 16-50*l* provides in pertinent part: "(b) Each application shall be accompanied by proof of service of a copy of such application on: (A) Each municipality in which any portion of such facility is to be located, both as primarily proposed and in the alternative locations listed . . . . A notice of such application shall be given to the general public, in municipalities entitled to receive notice under subdivision (A) of this subsection, by the publication of a summary of such application and the date on or about which it will be filed. Such notice shall be published under the regulations to be promulgated by the council, in such form and in such newspapers as will serve substantially to inform the public of such application and to afford interested persons sufficient time to prepare for and to be heard at the hearing prescribed in section 16-50m. Such notice shall be published in not less than ten point, boldface type. A notice of such an appli-

deprived the Council of jurisdiction to consider Exeter's certificate application. The plaintiffs do not contest the timeliness or the sufficiency of the content of the notice published in the Norwich Bulletin. They contend, however, that Sterling's proximity to Rhode Island required

cation for a certificate for a facility described in subdivision (3), (4), (5) or (6) of subsection (a) of section 16-50i shall also be sent, by certified or registered mail, to each person appearing of record as an owner of property which abuts the proposed primary or alternative sites on which the facility would be located. Such notice shall be sent at the same time that notice of such application is given to the general public."

General Statutes § 16-50m provides: "PUBLIC HEARING. NOTICE. (a) Upon the receipt of an application for a certificate complying with section 16-50l, the council shall promptly fix a commencement date and location for a public hearing thereon not less than thirty days nor more than one hundred fifty days after such receipt. At least one session of such hearing shall be held after six-thirty p.m. for the convenience of the general public. Such hearing shall be held at a location selected by the council, in the county in which the facility or any part thereof is to be located. If the proposed facility is to be located in more than one county, the council shall fix the location for a public hearing in whichever county it determines is most appropriate, provided the council may hold hearings in more than one county.

"(b) (1) The council shall hold a hearing on an application for an amendment of a certificate not less than thirty days nor more than sixty days after receipt of the application in the same manner as a hearing is held on an application for a certificate if, in the opinion of the council, the change to be authorized in the facility would result in any material increase in any environmental impact of such facility or would result in a substantial change in the location of all or a portion of the facility, other than as provided in the alternatives set forth in the original application for the certificate, provided the council may, in its discretion, return without prejudice an application for an amendment of a certificate to the applicant with a statement of the reasons for such return. (2) The council may hold a hearing on a resolution for amendment of a certificate not less than thirty days nor more than sixty days after adoption of the resolution in the same manner as provided in subsection (a) of this section. The council shall hold a hearing if a request for a hearing is received from the certificate holder or from a person entitled to be a party to the proceedings within twenty days after publication of notice of the resolution. Such hearing shall be held not less than thirty days nor more than sixty days after the receipt of such request in the same manner as provided in subsection (a) of this section. (3) The county in which the facility is deemed to be located for purposes of a hear-

the defendants to publish notice in that state as well. Because the Council held two days of hearings before notice was published in the state of Rhode Island, the plaintiffs assert that the Council's proceedings were invalid.

---

ing under this subsection shall be the county in which the portion of the facility proposed for modification is located.

"(c) The council shall cause notices of the date and location of each hearing to be mailed, within one week of the fixing of the date and location, to the applicant and each person entitled under section 16-50*l* to receive a copy of the application or resolution. The general notice to the public shall be published in not less than ten point, boldface type.

"(d) Hearings, including general hearings on issues which may be common to more than one application, may be held before a majority of the members of the council.

"(e) During any hearing on an application or resolution held pursuant to this section, the council may take notice of any facts found at a general hearing."

General Statutes § 4-177 provides: "CONTESTED CASES. NOTICE. RECORD. (a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

"(b) The notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.

"(c) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.

"(d) Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default.

"(e) The record in a contested case shall include: (1) All pleadings, motions and intermediate rulings; (2) evidence received or considered; (3) questions and offers of proof, objections and rulings thereon; (4) any decision, opinion or report by the officer presiding at the hearing.

"(f) Oral proceedings or any part thereof shall be transcribed on request of any party. The requesting party shall pay accordingly, the cost of such transcript or part thereof.

"(g) Findings of fact shall be based exclusively on the evidence and on matters officially noticed."

This statute was amended effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 2, 107.

The trial court addressed this issue in its decision on the plaintiffs' motion for articulation, wherein it stated: "The defendants did publish notice in the state of Rhode Island on December 3, 1987. They were not required to do so. [T]he defendants complied with the notice requirements of the statutes cited by the plaintiff." We agree.

The plaintiffs' argument for publication of notice in Rhode Island finds no support in the express language of the relevant provisions of the Public Utility Environmental Standards Act, General Statutes §§ 16-50g through 16-50z. Of the sections to which the plaintiffs allude, only § 16-50*l* specifically addresses the issue of who is entitled to public notice of proceedings concerning a certificate of environmental compatibility and public need. That section does not avail the plaintiffs, because it provides, in subsection (b), that an applicant has a duty to give notice to members of the general public in "[e]ach municipality in which any portion of such facility is to be located, both as primarily proposed and in the alternative locations listed [in the application]." See also Regs., Conn. State Agencies § 16-50*l*-1 (e). The Rhode Island plaintiffs are not entitled to public notice under this section.

The other provision on which the plaintiffs principally rely is § 16-50m (c), which requires the Council itself to give public notice of the date and location of its hearings by "general notice to the public." See also Regs., Conn. State Agencies § 16-50j-21. By reasonable implication, the object of the Council's notice must be the same as that of the applicant's notice, since § 16-50m (c), in the preceding sentence, incorporates § 16-50*l* by reference. "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 401–402, 288 A.2d 435 (1971). We are obli-

gated, furthermore, to read statutes together when they relate to the same subject matter. *Felia* v. *Westport,* 214 Conn. 181, 187, 571 A.2d 89 (1990); *In re Ralph M.,* 211 Conn. 289, 304–305, 559 A.2d 179 (1989). Read together, §§ 16-50m (c) and 16-50*l* (b) manifest the legislature's intention that the Council, like certificate applicants, is only required to give public notice to the members of the general public who live in the municipality where the proposed plant is to be built and operated.

Nothing in the general "reasonable notice" requirement contained in the Uniform Administrative Procedure Act, § 4-177, displaces the specific instructions for public notice contained in §§ 16-50*l* and 16-50m. Textually, § 4-177 speaks of notice to "parties"; the plaintiffs have not asserted any deficiencies in the notices that they received once they became parties. More broadly, any potential conflict between the general provisions of § 4-177 and the specific provisions of the Public Utility Environmental Standards Act would have to be resolved in favor of the latter. *Meriden* v. *Board of Tax Review,* supra. The relevant "municipality" for public notice in this case was Sterling, not Rhode Island.

## II

In addition to their statutory argument, the plaintiffs contend that the Council violated their constitutional rights to procedural due process. They maintain that they were deprived of a meaningful opportunity to be heard because the defendants: (1) provided constitutionally inadequate notice; (2) denied their requests for continuances; and (3) impaired their ability to participate fully in the administrative proceedings. The trial court considered and rejected each of these contentions.

We assume, arguendo,[5] that the plaintiffs had some procedural due process rights with regard to the administrative proceedings to consider Exeter's application for a certificate of environmental capacity and public need. The question that remains is the extent of the plaintiffs' due process rights. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Mathews* v. *Eldridge,* 424 U.S. 319, 324–25, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

The notice that the plaintiffs received in this case in fact enabled them to appear at, and to participate in, the hearings held by the Council. Their legitimate interest in contesting the environmental consequences of Exeter's application does not have the same individual impact as the interest of a person at risk of losing a professional license; *Lieb* v. *Board of Examiners for Nursing,* 177 Conn. 78, 411 A.2d 42 (1979); a long standing teacher facing dismissal; *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 355 A.2d 265 (1974); or a utility company contesting utility rate adjustments. *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 405 A.2d 638 (1978). At best, these plaintiffs can claim to have

[5] The plaintiffs premise their standing to pursue a claim of due process violation on property rights allegedly conferred upon them by the Connecticut Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20, as interpreted in *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 55–56, 441 A.2d 68 (1981). We need not resolve today the extent to which the act would confer such property rights in the absence of a showing of any specific personal or legal interest in the subject matter of the proceedings at issue. At least one of the Rhode Island plaintiffs, the Providence Water Supply Board, was an intervenor at the administrative level and hence had statutory aggrievement sufficient to raise all relevant environmental issues under General Statutes § 22a-19. Statutory aggrievement ordinarily encompasses standing to raise constitutional as well as statutory issues that have an environmental nexus. *Connecticut Fund for the Environment* v. *Stamford,* 192 Conn. 247, 249–50, 470 A.2d 1214 (1984).

a due process right, as members of the general public, to notice by publication. "The purpose of notice by publication to the general public is to ' "advise all affected parties of their opportunity to be heard and to be apprised of the relief sought." ' *Schwartz* v. *Hamden,* 168 Conn. 8, 14, 357 A.2d 488 (1975), quoting *Slagle* v. *Zoning Board of Appeals,* [144 Conn. 690, 693, 137 A.2d 542 (1957)]. That purpose was fulfilled in this case." *Preston* v. *Connecticut Siting Council,* 20 Conn. App. 474, 481, 568 A.2d 799 (1990); see also *Eagan* v. *Zoning Board of Appeals,* 20 Conn. App. 561, 566, 568 A.2d 811 (1990). The plaintiffs' due process rights to notice were not violated.

The plaintiffs are no more persuasive in their claim that they had a constitutional right to the continuances they requested from the Council. The trial court found that "[u]nder CGS section 16-50p, the Council had ten months from the date of the application to issue its opinion." The plaintiffs have not challenged the validity of this holding, nor have they alleged that the Council acted in bad faith in insisting that it was required to conclude its public proceedings at some reasonable time before May 1, 1988, in order to meet this statutory deadline.

Requests for continuances invoke the discretionary authority of the adjudicating tribunal. "[O]n review every reasonable presumption in favor of the [tribunal's] ruling will be made. . . . The [tribunal's] decision will be reversed only if it represents a gross abuse of discretion." *State* v. *Haye,* 214 Conn. 476, 483, 572 A.2d 974 (1990), and cases therein cited. In deciding whether the denial of a continuance is so arbitrary as to violate due process, we have not resorted to mechanical tests but have instead examined closely the particular facts of each individual case. Id. In the present circumstances, it was not unconstitutional for the Council, in good faith, to balance its statutory time

constraints against the plaintiffs' desire for more time to present their objections to Exeter's proposal. The trial court found that "[t]he Council scheduled additional public hearings and accepted submissions from the plaintiffs after the public hearings had ended." In light of these additional opportunities for the plaintiffs to voice their concerns, we conclude that the plaintiffs have failed to demonstrate an unconstitutional abuse of discretion in this case. See *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980).

We are equally unpersuaded by the plaintiffs' umbrella argument that they were unconstitutionally deprived of an opportunity to participate in the Council's "thoughtful and meaningful consideration of environmental factors." *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 68, 441 A.2d 68 (1981). In addition to renewing their complaint of inadequate notice and denial of continuances, the plaintiffs focus on the Council's decision, at the February 9, 1988 hearing, that the plaintiffs would be limited to presenting new information and would be precluded from questioning Exeter on information presented on or prior to the December 23, 1987 hearing. Many of the plaintiffs had, however, the opportunity, which they exercised, to scrutinize and criticize this information earlier. In addition, the trial court found, in its review of the transcript, that the plaintiffs had not in fact been prevented from asking any questions or making any submissions. Constitutional principles permit an administrative agency to organize its hearing schedule so as to balance its interest in reasonable, orderly and non-repetitive proceedings against the risk of erroneous deprivation of a private interest. *Mathews* v. *Eldridge,* supra, 335, 348–49; *Pet* v. *Department of Health Services,* 207 Conn. 346, 364–65, 542 A.2d 672 (1988); *Petrowski* v. *Norwich Free Academy,* 199 Conn. 231, 235, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107

S. Ct. 42, 93 L. Ed. 2d 5 (1986). The present record discloses no violation of the plaintiffs' procedural rights to due process.

## III

The plaintiffs contend, finally, that the Council violated the requirement of General Statutes § 4-178 (3) in the Uniform Administrative Procedure Act that "a party may conduct cross-examinations required for a full and true disclosure of the facts." See also Regs., Conn. State Agencies § 16-50j-28.[6] The plaintiffs main-

---

[6] The Regulations of Connecticut State Agencies, § 16-50j-28 provides: "RULES OF EVIDENCE

"The following rules of evidence shall be followed in contested cases:

"(a) RULES OF PRIVILEGE. The council shall give effect to the rules of privilege recognized by law in Connecticut. Subject to these requirements and subject to the right of any party to cross examine, any testimony may be received in written form.

"(b) DOCUMENTARY EVIDENCE. Documentary evidence may be received at the discretion of the council in the form of copies or excerpts, if the original is found not readily available. Upon request by any party or intervenor, an opportunity shall be granted to compare the copy with the original, which shall be subject to production by the person offering such copies. Any documentary evidence that is admitted in the form of a copy or excerpt may be stricken at the discretion of the council upon the failure to produce the original thereof upon finding that the interest of any party or intervenor will be prejudiced substantially thereby.

"(c) CROSS EXAMINATION. Cross examination may be conducted if required for full and true disclosure of the facts.

"(d) FACTS NOTICED, COUNCIL RECORDS. The council may take notice of judicially cognizable facts, including prior decisions and orders of the council. Any exhibit admitted as evidence by the council in a prior hearing of a contested case may be offered as evidence in a subsequent contested case and admitted as an exhibit therein; but the council shall not deem such exhibit to be judicially cognizable in whole or in part and shall not consider any facts set forth therein unless such exhibit is duly admitted as evidence in the contested case then being heard.

"(e) FACTS NOTICED, PROCEDURE. The council may take notice of generally recognized technical or scientific facts within the council's specialized knowledge. Parties and intervenors shall be afforded an opportunity to contest the material so noticed by being notified before or during the hearing by an appropriate reference in preliminary reports or otherwise of the material noticed. This provision shall also apply to material noticed in any staff

tain that they were deprived of the opportunity to cross-examine the authors of Exeter's Exhibit 36, which was submitted to the Council after the close of evidence, and upon which the Council relied in its finding No. 135 that "[t]he water quality of the Scituate and Providence Water Supply Board watersheds would not be adversely impacted by the proposed facility."

The trial court's findings put this claim into context. The court stated: "Plaintiff Providence Water Supply Board offered a technical report which had not been filed early enough to be entered into evidence. A procedure was devised by the Council to accept the report, giving all parties the opportunity to file technical comments on the contents of the report. No party objected. Plaintiff Providence Water Board was granted an additional week to file a rebuttal. While possibly unwise, this procedure was in no way unfair to the plaintiffs. . . . Plaintiffs have not met their burden on their [claim] that they were prejudiced . . . ." The plaintiffs have not challenged the accuracy of the court's factual findings.

The plaintiffs' claim of a statutory violation cannot survive the finding that Exhibit 36 was proffered and received as commentary on the plaintiffs' own belated report. As the trial court aptly noted, we have held that "an expert regulatory agency may treat the testimony of expert witnesses as to which conclusions they would draw from facts or record as mere argument, which, if reasonable, may help the agency arrive at its decision . . . but which the agency may disregard if contrary to its knowledge or experience." *Connecticut Natural Gas Corporation* v. *Public Utilities Control*

memoranda or data that may be submitted to the council for its consideration in the determination of the contested case. The council shall nevertheless employ its experience, technical competence, and specialized knowledge in evaluating the evidence presented at the hearing for the purpose of making its finding of facts and arriving at a decision in any contested case."

*Authority,* 183 Conn. 128, 142–43, 439 A.2d 282 (1981). It was the plaintiffs' burden to prove that the Council in some way departed from its legal and proper charge of treating the exhibit as mere argument. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 537, 525 A.2d 940 (1987).

Lastly, even if we were to conclude that the record might be construed to show some marginal impairment of a right to cross-examine, the plaintiffs have not met their burden of showing prejudice. They have neither alleged nor proved that Exhibit 36 was the only record evidence to support the Council's finding that Exeter's proposed facility would have no significant environmental impact on the Rhode Island watersheds. The Council made voluminous detailed findings about the facility's likely effects on water and on the air. These findings consistently indicate that the facility, properly constructed in accordance with the Council's guidelines, would have no significant adverse environmental impact. The Council specifically found, furthermore, in reliance on an exhibit other than Exhibit 36, that: "The proposed facility would have no significant impact on the environment or water supply of Rhode Island over the 25-year operational term of the facility." The plaintiffs have therefore failed to establish any ground for overturning the decision reached by the Council.

The judgment is affirmed.

In this opinion the other justices concurred.