[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Dorothy Foley, from the denial of her claim for unemployment benefits by the defendant Administrator of Unemployment Compensation. The Administrator denied the plaintiffs application for benefits under the authority of General Statutes § 31-241, ruling as follows:
 You left your job at Marlborough Health Care Center, Inc. on February 18, 1994 because you resented your supervisor's criticism. Since the criticism was reasonable and the supervisor was acting in the normal course of his duties, we conclude that you left suitable work voluntarily and without sufficient cause. You are therefore ineligible for benefits.
CT Page 4010-BBB
Administrator's Determination, Administrator's Exhibit #1, p. 1.
Later, an Unemployment Appeals Referee, acting under the authority of General Statutes § 31-242, conducted a de novo
hearing, made findings of fact, and affirmed the decision of the Administrator to deny the plaintiff benefits. The Referee upheld the decision of the Administrator on two basic grounds: first, that the plaintiff had not demonstrated sufficient job-connected cause for leaving her job because she had failed to prove that the criticism which prompted her departure was unrelenting, totally unwarranted, abusive or discriminatorily motivated; and second, that the plaintiff had failed to take remedial steps to preserve her job or to pursue alternatives with her employer prior to leaving. through corrective measures would have been taken by her employer had such efforts been made. Decision of Appeals Referee, p. 3.
The plaintiff then appealed the Referee's ruling to the Employment Security Board of Review, which adopted the Referee's findings and affirmed her decision under General Statutes §31-249. In so doing, the Board rejected the plaintiff's claim that the Appeals Referee had denied her due process of law by: (1) refusing to hear the testimony of her only witness, former co-worker Grace Adams; and (2) receiving and considering statements from opposing witnesses at the conclusion of the hearing, without affording the plaintiff an opportunity to cross-examine on them.
The plaintiff now appeals to this Court from the Board of Review's decision under General Statutes § 31-249(b), arguing that that decision should be overturned because it erroneously rejected both aspects of her due process challenge.
 I
As a person who has been denied unemployment benefits and exhausted her remedy before the Board, the plaintiff is aggrieved by the Board's decision and may properly seek review of that decision before this Court. General Statutes §§ 31-248(c) and31-249a(c).
 II
"To the extent that an administrative appeal, pursuant to CT Page 4010-CCC Section 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the Board of Review." United Parcel Service Inc. v. Administrator, 209 Conn. 381,385 (1988). The court must not retry facts or hear evidence.Id., Reeder v. Administrator, 8 Conn. L. Rptr. 168 (Sullivan, J., February 1, 1993). "If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts." United Parcel Service Inc. v.Administrator, supra, 385. "The factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts. . . However, it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." Bridgeport Hospital v. Commissionon Human Rights and Opportunities, 232 Conn. 91, 109 (1995). "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator, supra, 385; see also Fellin v. Administrator, 196 Conn. 440, 444-45 (1985).
 III
Where a claimant has left suitable work voluntarily and without sufficient cause, she is ineligible for unemployment benefits. General Statutes § 31-236 (2)(A); see also Fellinv. Administrator, supra, 444-48. To establish sufficient cause under § 31-236()(A), a claimant must show (1) that she left employment for reasons which would compel the ordinary prudent person to leave; and (2) that there was no reasonable alternative available to her. Pereira v. Administrator, 6 Conn. App. 658,660-61, cert. denied, 200 Conn. 803 (1986).
Against this background, the facts of the case are as follows. The plaintiff, Dorothy Foley, served as a cook at the Marlborough Health Care Center. On February 18, 1994, the plaintiff's supervisor, the food service director, vehemently criticized her job performance, accusing her of taking extended breaks with the housekeeper, causing dinners to be served late, and receiving overtime pay without earning it. The plaintiff was made so distraught by these accusations that she did not return to work. This claim for unemployment benefits resulted. CT Page 4010-DDD
The hearing before the Referee was attended by the plaintiff, her former co-worker Grace Adams, and three representatives from the Marlborough Health Care Center — Food Service Director Lauren Mariano, Dietician Susan Mastrangelo and Administrator Thomas Harris. After the parties made brief opening statements, the Referee introduced certain exhibits, including the administrative record upon which the Administrator denied the plaintiff's claim, and called upon the plaintiff to explain why she had left her job. The plaintiff explained that on the day in question, she went to the office of her supervisor, Lauren Mariano, to report an incident during the prior night's shift in which one of her co-workers, Lorraine Watts, threw beets into the hair of another co-worker, Grace Adams, in a burst of frustration at the recent change in her job classification. Instead of listening to her, however, Ms. Mariano who had already spoken with Ms. Watts, reportedly began to scream and rage at the plaintiff for improperly supervising the night shift, and especially for doing several things which she claims never to have done. Among the accusations made against her were that she was drawing overtime pay improperly, she was not available to feed her staff when she should have been, and she took a break with the housekeeper when she should have been working.
The plaintiff testified that she was shocked and amazed by the Food Service Director's vehement reaction, especially, in view of the wholly unfounded nature of the accusations against her, the tone of her supervisor's voice, and the supervisor's unwillingness to hear her side of the story. Assertedly frustrated by her sense of futility about continuing the conversation, and suffering from job-related stress due to her increasing job responsibilities, the plaintiff walked out her supervisor's door, never to return to work. Having worked for three years for the Health Care Center and had a good working relationship all that time, the plaintiff was distressed to learn how badly she could be treated and how cavalierly she could be let go from her job.
On cross-examination by the Administrator and Mr. Harris, the plaintiff explained that while she was under stress at the time, she had not told either her supervisor or her doctor about it.
The following colloquy then occurred:
 MR. HARRIS: Can I ask why you brought Grace [Adams] here today?
CT Page 4010-EEE
 MS. FOLEY: Because I wanted her to tell of the things that I was accused of, that my dinners were late; that I took a break with the housekeeper; that I. . . No the things that were discussed with Lauren [the food service director] in that,
 REFEREE: OK. I'm gonna (sic) move right to Grace as soon as you finish your cross-examination. Have you finished?
* * *
REFEREE: Any other questions for Ms. Foley?
MR. HARRIS: Nothing.
 REFEREE: OK. Ms. Adams, Mr. Harris just asked a question that I was gonna (sic) ask you. Now why are you here today ma'am?
MS. ADAMS: Well, to the, defend Dot in overtime.
 REFEREE: OK. [W]e're really, that's not where my inquir[y]'s leading. I don't need that. Were you here just to reiterate what happened on the 17th with Lauren?
MS. ADAMS: I can do that.
 REFEREE: OK. I don't need that OK, cause that's not what we're here to discuss. Were you present with Ms. Foley when she had the meeting with Lauren?
MS. ADAMS: No.
 REFEREE: OK. So there's really nothing that you can testify to that's important then. Ms. Foley will take over.
 MS. ADAMS: The misleading statement that there was overtime.
REFEREE: OK, and I believe that Ms. Foley can CT Page 4010-FFF cover that on her own. OK, that's fine then. Is there anything else you have to say?
MS. ADAMS: No.
 REFEREE: OK, Fine. Thank you. Alright. If I can wrap this up today I really would like to so we don't have to take the time to come back. I'm gonna go right to Lauren. . . .
* * *
Transcript of Hearing Before Referee, pp. 14-15.
Though the hearing continued for a short time thereafter, Ms. Foley was never again permitted to testify[1] or to explain in more detail what she intended to adduce by way of testimony from Ms. Adams. Instead, the Referee elicited brief oral statements from each of the employer's witnesses, all of whom expressed surprise that the plaintiff had left her job in the wake of her confrontation with Ms. Mariano, one of whom — Ms. Mastrangelo — testified that the confrontation involved raised voices but no actual shouting, and none of whom discussed the merits of the plaintiff's claim that every criticism levelled against her was totally unjustified. Id., pp. 16-18.
At the very end of the hearing, the Referee received in evidence written statements from Ms. Mariano and Ms. Mastrangelo, whose contents were similar to that of statements they had previously given to the Administrator. The plaintiff was given no opportunity to cross-examine either witness on her written statement. Id., p. 19.
On May 6, 1994, the Referee filed her decision and mailed it to the parties. In it she ruled that the plaintiff was not entitled to unemployment benefits for two reasons.
First, the Referee concluded as follows that the plaintiff had insufficient job-connected cause for leaving her job:
 The record reveals that the claimant walked off her job on February 18, 1994, because of her supervisor's conduct and criticism. Criticism, even harsh criticism, is the prerogative of the employer and a claimant does not have sufficient cause forCT Page 4010-GGG leaving unless the criticism is unrelenting, totally unwarranted, abusive or discriminatorily motivated.
 An exception is allowed where the claimant, suffering from stress or other emotional problems, is unable to tolerate the criticism. Otherwise, a claimant who is overly sensitive to criticism will be considered to have left his job for personal reasons. The criterion for judging a workers' motive for leaving his job is the standard of reasonableness as applied to the average man or woman and not to the supersensitive. Sirois v. A A Screw Machine Co., Board of Review, Case No. 86-83. B.R. (3/17/83).
 Since the claimant failed to submit medical evidence to substantiate her claim that she was suffering from job-related stress and since she has not demonstrated that the Food Service Director's criticism was unrelenting, totally unwarranted. abusive or discriminatorily motivated, the Referee finds that the claimant has not demonstrated that she had sufficient job-connected cause for leaving.
Decision of Appeals Referee, pp. 2-3. (Emphasis added.)
Second, the Referee ruled the plaintiff ineligible for unemployment benefits because she had failed, before leaving her job, to pursue reasonable alternatives to quitting with her employer, who would have accommodated her if she had made the approach. On this score, the Referee observed that "the record demonstrates that the claimant and the Food Service Director had always worked well together and had had a good relationship prior to the conversation on February 18, 1994, [and thus that] whatever problem existed on that day was resolvable." Id., p. 3
On her appeal to the Board of Review, the plaintiff claimed that he Referee had violated her due process rights in two ways: first, by refusing to hear the testimony of Grace Adams; and second, by receiving the statements of her employer's two witnesses into evidence without giving her an opportunity to cross-examine the witnesses on them. The Board rejected both claims for the following reasons.
As for the plaintiff's claim that the Referee had wrongfully CT Page 4010-HHH refused to hear testimony from her only witness, the Board stated that:
 Our review of the record of the Referee's hearing including the record of the hearing, reveals that the claimant had one witness in the hearing room. The Referee questioned the witness regarding the evidence she possessed. The claimant's witness, Grace Adams, testified that she was not present during the claimant's meeting with her supervisor, but only wanted to respond to the employer's contention that the claimant was working overtime. The claimant had already indicated that she had not been working overtime. We find that the Referee allowed the claimant to testify and fully present her case and that the claimant testified that she had not been working overtime. . . . The claimant was allowed the opportunity to testify and fully present her case. The Referee afforded the claimant adequate opportunity to offer relevant testimony cross-examining the employer's witness, and rebut any evidence offered by the employer . . . . . . Under these circumstances, the Board finds, that the claimant has been afforded all the process due her.
Decision of Board of Review, p. 1.
As for the plaintiff's second claim on appeal from the Referee's decision, the Board of Review ruled that the post-hearing receipt of statements from the employer's two witnesses was a harmless error since the plaintiff had not objected to their introduction, the Referee had not necessarily relied upon them in reaching her decision, and they contained nothing that was not already included in the administrative record. Id., p. 2.
 IV
"Due process requires a fair hearing before a fair tribunal, which principle applies with equal vigor to administrative adjudicatory proceedings." Petrowski v. Norwich Free Academy,199 Conn. 231, 235 (1986). "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to CT Page 4010-III act, to cross-examine witnesses and to offer rebuttal evidence."Connecticut Fund For the Environment, Inc. v. Standard, 192 Conn. 247,249 (1984). "Once a question of lack of due process is raised, however, the plaintiff has the burden of proof to show the board acted improperly." Fromer v. Boyer-Napert Partnership,42 Conn. Sup. 57, 72 (1991), aff'd 26 Conn. App. 185. The plaintiff also has the burden to show that she was prejudiced by the procedural ruling. Id.
 A
On the issue of whether the plaintiff should have been allowed to cross-examine on the written statements of witnesses submitted at the conclusion of the hearing, the plaintiff was required to submit proof that she was prejudiced by her inability to cross-examine on the statements. Id.; Concerned Citizens ofSterling v. Connecticut Siting Council, 215 Conn. 474, 489
(1990). The plaintiff's prior opportunity to cross-examine the witnesses whose statements were submitted, the similarity between the statements and the witnesses' earlier testimony, and the plaintiff's failure to provide other facts demonstrating that she was prejudiced by the lack of opportunity to cross-examine on the statements supports the Board's finding that the denial of, `cross-examination did not rise to the level of a due process violation, and was at most a harmless error. See ConcernedCitizens of Sterling v. Connecticut Siting Council, supra, 489.
 B
However, the Referee's refusal to allow Grace Adams to testify on behalf of the plaintiff presents a more troublesome due process issue. "Criticism even when harsh is the prerogative of management. Unless it is patently offensive, totallyunjustified or discriminatorily applied, it generally does not provide sufficient cause for a claimant to leave her employment."Kelly v. Noble Broadcast of Connecticut, 1004-BR-88 (11/22/88) (emphasis added). By the same token, the leveling of "totally unjustified" criticism may indeed provide sufficient cause to voluntarily leave one's employment, yet still be eligible for unemployment benefits. Id.; see also Goldberg v. Administrator,
Dockets No. 75349, Superior Court, New Haven, July 18, 1951 ("An employer can be so mean as to drive an employee of the job. The claim that you are supposed to take it is not a sufficient answer.") CT Page 4010-JJJ
On the record of this appeal, the Board of Review's decision to reject the plaintiff's due process challenge to the exclusion of Ms. Adams's testimony from the hearing must itself be rejected as arbitrary, unreasonable, and an abuse of the Board's discretion. The Board's decision is not supported by the record of proceedings before the Referee, and ignores clear evidence that Ms. Adams's testimony would have impacted materially on the central issue in the plaintiff's case, to wit: whether the criticism directed at the plaintiff was so "totally unwarranted" as to give her sufficient job-connected cause for voluntarily leaving her job.
The Board's decision rests on four basic points: first, that the Referee actually questioned Ms. Adams, and thereby learned about what she would testify; second, that all Ms. Adams could testify to was that the accusation against the plaintiff concerning improper use of overtime was incorrect; third, that the plaintiff had fully addressed the overtime issue in her own testimony; and fourth, for the foregoing reasons and others — notably, that the plaintiff had been permitted to cross-examine the witnesses against her — the plaintiff had been afforded a full and fair opportunity to present her claim. The Court will address each of these points in the order presented.
It is true that the Referee addressed Ms. Adams as to the anticipated subject matter of her testimony. However, her inquiry of Ms. Adams was both misdirected and inadequate. First, the person who should have been asked what Ms. Adams would say in her testimony was the real party in interest in this case, the plaintiff herself. The plaintiff was the person who had been involved in the events which led to her departure. The plaintiff had filed documents stating a claim for unemployment benefits. The plaintiff had read the documents submitted against her and was aware of the reasons for the Administrator's threshold decision to deny benefits. And it was the plaintiff who had decided to call Grace Adams as a witness. Thus, as a matter of simple fairness and logic, it was the plaintiff who should have been asked to describe the reasons why Ms. Adams was being called to testify.
In fact, the plaintiff did state those reasons in answer to a question from Mr. Harris on cross-examination. Her answer was that Ms. Adams would help her put the lie to all of the accusations made against her on February 18, 1994, including the claim she was not available to feed her staff and the claim that CT Page 4010-KKK she took extended breaks with the housekeeper. Unfortunately, however, the Board ignored the plaintiff's clear statement in describing the substance of Ms. Adams's proposed testimony. The Board's finding that all Ms. Adams wanted to testify about was overtime is flatly contradicted by the record before the Referee.
Against this background, the Board's finding that the plaintiff herself had addressed the question of overtime is quite beside the point. Though it is true the plaintiff addressed this part in her testimony, it is also true that her testimony proved unpersuasive to the Referee on the critical question presented for decision, whether the criticism directed against her was totally unwarranted. Ms. Adams, her long time co-worker, could and would have supported that claim by defending her not only against the overtime accusation but against the other two accusations included in the Food Service Director's charges of February 18, 1994. She would, moreover, have put in context the accusations themselves, describing the conduct of the plaintiff's accuser, Lorraine Watts, on the previous night's shift. Had this testimony been received in evidence, the Referee might well have found that the criticisms directed at Ms. Foley were so totally unwarranted as to justify her voluntary departure from her job. Without Ms. Adams's testimony, the plaintiff was not given a full and fair opportunity to present her claim.
Moreover, it cannot be said that the Plaintiff should be denied benefits due to her refusal to engage in remedial measures to retain her employment. The individual with whom plaintiff would have had to confer on that issue was the Food Service Director, who, of course, was the same individual who had accused her of impermissible conduct in the first place. If the Referee, upon hearing the testimony of Grace Adams, had concluded that the criticism directed towards the plaintiff was so totally unwarranted as to justify her voluntary departure from her job, she might have concluded as well that any effort by the plaintiff to take remedial action would have proved futile. "It is well-settled that a remedy which is futile is not really a remedy and need not be exhausted." United Electric Supply v. E. I.Constructors, Judicial District of New London at New London, No. 516455, January 29, 1993.
For the reasons stated, the Court hereby sustains the plaintiff's appeal and, under the authority of General Statutes § 31-249b, orders the Board to remand the case to a Referee for a new hearing at which testimony from Grace Adams can be CT Page 4010-LLL presented.
Michael R. Sheldon, Judge