[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The defendant Anchor Reef Club of Branford, LLC is the current owner of a parcel of land consisting of 18.2 acres, located on Maple Street in Branford.
The property, the former site of the Malleable Iron Fittings (MIF) factory, is situated in an GI (General Industrial) zone, and is within the designated Town Center Overlay District.
The parcel, depicted as parcel A-1 on the Anchor Reef Development Plans dated June 14, 2000 (ROR 3), has been designated by the Branford Planning and Zoning Commission as a Special Development Area (SDA).
At the time of the initial zoning application, June 14, 2000, the property was owned by the defendant RBR, LLC (ROR 5).
The defendant Iron Works Development of Branford, LLC, was at the time, and remains, the contract purchaser and proposed developer of the property.
In the petition to establish a Planned Development District (PDD) filed June 14, 2000, approval was sought for a mixed use commercial and residential development.
The application was submitted by the former owner, pursuant to § 35 of the Branford Zoning Regulations.
Because the Branford Planing and Zoning Commission had designated the property as a Special Development Area (SDA) many year earlier, the parcel was eligible for consideration as a possible Planned Development District (PDD). CT Page 14083
The application envisioned the use of the 18.2 acres comprising parcel A-1 (ROR 3) for development, while parcel A-2, consisting of 8.4 acres, would remain undeveloped.
The application proposed replacing the crumbling and abandoned Malleable Iron Fittings (MIF) factory buildings located on the property with mixed use development consisting of residential housing, office and commercial space, a hotel, restaurant, and conference facility.
The applicable zoning regulations mandate a two step procedure, prior to establishing a Planned Development District (PDD).
Pursuant to § 35.6 of the regulations, following submission of a basic development plan, the commission is required to conduct a public hearing, and make specific findings, as set forth in § 35.8 of the regulations.
Only after a basic development plan is approved, is the commission authorized to consider detailed development plans, setting forth the specifics of the proposal.
If the detailed development plans are approved, the PDD is established, and both the applicable zoning map and the regulations are amended to reflect the change.
Along with the June 14, 2000 petition, the applicant submitted a Basic Development Plan and maps (ROR 7 8), along with a detailed traffic study.
Because § 35.3 of the zoning regulations provides "Buildings and other structures shall not exceed a height of 40 feet," appropriate waivers from the Branford Zoning Board of Appeals were sought, and obtained prior to submitting the PDD application (ROR 12 13).
The Branford Inland Wetlands Commission did not require a permit for the project, in light of the involvement of the State of Connecticut Department of Environmental Protection (DEP) (ROR 1).
The petition (ROR 5) referenced a Coastal Area Management (CAM) report submitted on an earlier occasion, and an addendum to that report was submitted with the application (ROR 15).
The Branford Planning and Zoning Commission conducted public hearings on the proposed Planned Development District (PDD) on September 7, 2000, September 14, 2000 and September 21, 2000 (ROR 60, 61 62). CT Page 14084
The proposal submitted to the commission envisioned 150 dwelling units, located in five buildings, fronting on the Branford River.
In advocating the creation of the Planned Development District (PDD), the applicant argued that the proposed site is unique, having been used for industrial purposes since the 19th century, before the advent of environmental regulations.
The site had been designated a Special Development Area (SDA) twenty years earlier, and is difficult to develop, given the need to demolish aged buildings, thus mandating flexibility.
The proposal drew extensive public comment, and the defendant commission determined to hold a second public hearing, when the September 7 hearing adjourned at 11:55 p.m.
The public hearing resumed on September 14, 2000, at which time the commission entertained additional testimony and comments until past midnight.
The application was discussed on September 21, 2000 (ROR 62), October 5 (ROR 63), October 19 (ROR 64, and November 2 (ROR 65).
On November 16, 2000, the commission discussed a draft resolution regarding the proposal, and voted its approval, with amendments, 4-1 (ROR 66).
In approving the basic development plan and the coastal site plan, the commission made the findings required by § 35 of the zoning regulations.
Modifications were mandated by the commission concerning the intensity of the proposed use, traffic, available parking spaces, and the number of residential units which would be permitted. (ROR 66, p. 7-1 1).
Following approval of the basic development plan, a detailed development plan, as required under § 35.7 of the zoning regulations, was filed (ROR 71).
The commission unanimously adopted a resolution approving the detailed development plan on December 6, 2001 (ROR 91), along with a companion resolution approving the coastal site plan (ROR 92; ROR 99, p. 15).
The commission's approval of the Detailed Development Plan created a CT Page 14085 new Planned Development District (PDD), and authorized the regulations applicable to the new district.
From that approval, the plaintiffs bring this appeal.
AGGRIEVEMENT
This appeal was initiated on behalf of over 100 named plaintiffs.
At trial, only two, Kenneth Kaminsky, Sr., and Joseph Orts, testified.
A third plaintiff, Peter Capetta, presented no oral testimony, but a certified deed to 84 Maple Street, Branford, was admitted (Ex. 3).
Both Kenneth Kaminsky, Sr., who owns property at 45-47 Maple Street, Branford (Ex. 1), and Joseph Orts, who owns property and resides at 57 Maple Street (Ex. 2) claim to be statutorily aggrieved.
Aggrievement is jurisdictional, and pleading and proof of aggrievement are a necessary prerequisite for maintaining an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 307
(1991).
Section 8-8 (1) of the Connecticut General Statutes defines an aggrieved person as one "owning land that abuts, or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The phrase "any portion of the land involved in the decision" concerns the complete tract owned by the applicant, rather than the specific portion concerning the activity involved in a particular application.Hockberg v. Zoning Commission, 19 Conn. App. 357, 360 (1989).
Kenneth Kaminsky, Sr.'s property is located across the street from the Planned Development District (PDD).
He estimated the distance from his property boundary line to be 50 feet.
57 Maple Street, owned by Joseph M. Orts, is also across the street from the PDD.
He estimated the distance as between 40 and 50 feet from his property, to the land designated by the Branford Planing and Zoning Commission as a PDD. CT Page 14086
Since both Kenneth Kaminsky, Sr. and Joseph M. Orts own property located less than 100 feet from a portion of the land designates as a PDD, it is found that both are aggrieved by the decision of the defendant Branford Planning and Zoning Commission.
No testimony was received concerning the distance from 84 Maple Street to the designated PDD.
Therefore, a finding of aggrievement cannot be made concerning the plaintiff Peter Cappetta.
Furthermore, no documentary evidence or testimony was presented regarding any of the remaining plaintiffs, from which a finding of either statutory or classical aggrievement can be made.
However, because the plaintiffs Kenneth P. Kaminsky, Sr. and Joseph M. Orts are both statutorily aggrieved, the court has subject matter jurisdiction, even in the absence of a finding of aggrievement on behalf of any of the remaining plaintiffs. Concerned Citizens of Sterling, Inc.v. Connecticut Siting Council, 215 Conn. 474, 479 (1990); ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 529 n. 3 (1991).
 STANDARD OF REVIEW
All of the defendants agree that in establishing the Planned Development District (PDD) and adopting specific regulations, applicable to the PDD, the Branford Planning and Zoning Commission acted in a legislative capacity.
The plaintiffs contend that the commission acted in both a legislative, and administrative capacity.
A review of § 35 of the regulations, reveals that a particular area of Branford must be designated a Special Development Area (SDA) before it is eligible for Planned Development District (PDD) consideration.
After the mandatory two step process is concluded, and a PDD is established, the regulations adopted apply only to the land included in the PDD.
They are not regulations of general application, and have no force or effect in any other area of Branford.
Each district is unique, and the approval of a PDD in one area, CT Page 14087 provides no legal basis for seeking a PDD based upon identical regulations, on another parcel.
The court believes that the creation of a Planned Development District (PDD) involves the adoption of zoning regulations, and the amending of the zoning map.
Therefore, in adopting regulations applicable to the PDD, and establishing the PDD, the commission was acting in a legislative capacity, rather than in an administrative, or quasi-judicial capacity.DJ Quarry Products, Inc. v. Planning Zoning Commission,217 Conn. 447, 450 (1991).
Acting in a legislative capacity, the discretion of the commission is broad, because it is the role of the commission to formulate public policy. Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 543;Malafronte v. Planning Zoning Board, 155 Conn. 205, 209 (1967).
A commission, in the exercise of its discretion, is free to amend its regulations, or its zoning map, whenever time, experience, and responsible planning indicate a need for a change. Kaufman v. ZoningCommission, 232 Conn. 122, 151 (1965).
The exercise of that broad discretion must not be disturbed by a court, unless the commission has acted arbitrarily, or illegally. Burnhamv. Planning Zoning Commission, 189 Conn. 261, 266 (1983).
The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. Calandro v. Zoning Commission, 176 Conn. 439, 440
(1979).
A party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily, or illegally. Morningside Association v. Planning Zoning Board,162 Conn. 154, 157 (1972). There is a strong presumption of regularity in the proceedings of the commission. Murach v. Planning ZoningCommission, 196 Conn. 192, 205 (1985).
Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards, by indulging in a microscopic search for technical infirmities in their actions. Silver Lane Pickle Co. v. ZoningBoard of Appeals, 143 Conn. 316, 319 (1956). CT Page 14088
THE PROCEEDINGS BEFORE THE COMMISSION DID NOT VIOLATE THE REQUIREMENTS OFFUNDAMENTAL FAIRNESS
The plaintiffs contend that the public hearing process lacked fundamental fairness, and that they were denied the procedural protections necessary to ensure due process.
They specifically allege that the chairman of the defendant commission, Ellsworth McGuigan, denied them their right to cross-examine witnesses produced by the defendants during the September 14 portion of the public hearing.
They further allege that the chairman displayed a personal bias or prejudice against the opponents of the PDD, and that a conflict of interest is present.
The plaintiffs arguments are not persuasive.
The initial public hearing on September 7, 2000 was properly noticed (ROR 33), and the record fails to reflect any evidence that the September 14, 2000 hearing was not properly posted in accordance with applicable law.
At the September 14, 2000 public hearing, Attorney Dean Singewald, representing the Branford Point Association, spoke in opposition to the application, and asked for the opportunity to "cross-examine" the proponents of the application, and their experts.
The commission chairman informed him, consistent with procedures announced at the outset of the hearing, that he would not permit a dialogue in the form of a give-and-take analogous to a courtroom cross-examination.
The chairman informed Attorney Singewald that he was free to pose questions to the proponents, to which they could offer a response during the rebuttal period following the public comment portion of the hearing (ROR 61, p. 120-122).
Counsel proceeded to address comments to the commission, concerning the proposal, but declined to pose any specific inquiries for later reply.
During the rebuttal period, the proponents responded to the issues raised by Attorney Singewald, during his remarks (ROR 61, p. 126-131).
Courts have recognized a right of fundamental fairness in an CT Page 14089 administrative hearing. The conduct of a hearing should not violate fundamentals of natural justice. Miklus v. Zoning Board of Appeals,154 Conn. 399, 406 (1967).
The right of fundamental fairness is not a constitutional due process right. It is a common law right, which encompasses a variety of procedural protections. Grimes v. Conservation Commission, 243 Conn. 266,273 n. 11 (1997).
A municipal planning commission, whether functioning in a legislative, judicial or quasi-judicial capacity, is required to observe the safeguards guaranteed to applicants and the public to a fair opportunity to cross-examine witnesses, and to offer evidence in explanation or rebuttal. Forest Construction Co. v. Planning Zoning Commission,155 Conn. 699, 674 (1967); Dram Associates v. Planning ZoningCommission, 21 Conn. App. 538, 543 (1990).
The public has a right to know and to test the sufficiency of the facts upon which a commission bases its action. Reed v. Planning ZoningCommission, 208 Conn. 431, 433 (1988).
Although, as the defendants argue, the right of cross-examination of witnesses is particularly critical in situations where the zoning agency is acting in a quasi-judicial capacity, Wadell v. Board of ZoningAppeals, 126 Conn. 1, 9 (1949); Parsons v. Board of Zoning Appeals,140 Conn. 290, 293 (1953), the right has never been held inapplicable to a legislative proceeding.
In Dram Associates, the commission argued that it was not required to offer critics the right to cross-examine witnesses when acting in a legislative capacity.
The Appellate Court declined to decide that precise issue, after concluding that any error was harmless, based upon the facts of the case. Dram Associates v. Planning Zoning Commission, supra, 543-44.
An examination of the facts of this case, compels an identical conclusion.
Pursuant to the rules of procedure announced at the beginning of the public hearing process (ROR 60, p. 3-5), the chairman allowed time for public comments and rebuttal, and permitted Attorney Singewald to pose questions, which could be answered in rebuttal. CT Page 14090
Representatives of the proponents of the PDD responded to questions and issues raised by the attorney during the rebuttal segment of the evening.
The public was permitted an unfetted opportunity to comment on the proposal, to introduce and inspect documents, and to produce information designed to assist the commission in its deliberations.
An examination of the record reveals no discernable lack of courtesy or fairness directed to those in attendance, and the public hearing process was allocated two full evenings.
There is no evidence of any ex-parte communication of information to the commission, thus foreclosing the right to comment upon the evidence considered by the commission in arriving at its decision. Pizzola v.Planning Zoning Commission, 167 Conn. 202, 207 (1974).
In Wadell, Chief Justice Maltbie expressed a preference for courtroom style cross-examination when an agency sits in a quasi-judicial capacity, to the more restrictive parliamentary practice of posing questions "through the chair." Wadell v. Zoning Board of Appeals, supra, 8-9.
While cross-examination is not as critical when an agency acts in a legislative capacity, the record here shows that Attorney Singewald was denied the opportunity to cross-examine expert witnesses produced by the proponents of the PDD.
However, the record is bereft of any evidence that any opponent of the PDD was prejudiced by the chairman's insistence that the announced procedures be adhered to, or that the hearing was not a fundamentally fair proceeding.
To seize upon the lack of cross-examination by Attorney Singewald as a vehicle for overturning the commission's action, would transform a search for fundamental fairness, into a game of "Gotcha."
The plaintiffs have utterly failed to sustain their burden of demonstrating that the conduct of the hearing violated fundamental rules of natural justice, and any alleged error resulting from the denial of cross-examination, was harmless.
The plaintiffs further assert, without evidence or documentation, that the chairman of the commission should have disqualified himself from the proceedings, due to prejudice, and a conflict of interest. CT Page 14091
No request for recusal was made by the plaintiffs or their representative at the hearing.
Nor is there a scintilla of evidence that the chairman had any personal or financial interest in the outcome of the decision.
Scattershot accusations of "bias", "prejudice," hints of collusion, or "conflict of interest" charges without documentation, do nothing to advance the plaintiffs' appeal.
NECESSARY APPROVALS WERE RECEIVED
The record reflects that the applicant obtained a variance from the Branford Zoning Board of Appeals concerning the height restrictions contained in § 35.3 of the regulations (ROR 12 13).
A variance runs with the land, Reid v. Zoning Board of Appeals,235 Conn. 850, 858 (1996); § 8-6 (b), C.G.S.
The defendant Branford Planning and Zoning Commission properly acted in light of the variance contained in the records.
The record also contains specific reference to compliance with the requirements of the Coastal Area Management (CAM) plan, and the requirements of Connecticut General Statues § 22a-92.
No permit was required from the Inland Wetland Agency, in light of the involvement of the Connecticut DEP (ROR 1).
THE COMMISSION'S DECISION FINDS ABUNDANT SUPPORT IN THE RECORD
The commission was presented with a proposal to develop an 18.2 acre parcel, which was unique, and presented many development challenges.
Once the site of a thriving factory, the property is no longer suited, economically or environmentally, for its historic use.
Its location on the Branford River, near a railroad line, in an industrial zone, rendered the concept of a mixed use of the area appealing.
The plaintiffs rely upon § 35.2 of the Branford Zoning Regulations in support of their claim that the PDD is not in harmony with the character of the area. CT Page 14092
This reliance is misplaced.
The applicable regulation reads:
 ". . . particularly in suburban residential areas currently zoned R-3 and R-4, the use of PDDs are not encouraged soley for the purpose of achieving higher densities of residential development . . ."
It should be noted that the approved PDD is not located in an R-3 or R-4 zone, but in an industrial zone.
Furthermore, in passing upon this mixed use development, the commission clearly did not act "soley" to achieve a higher density of residential properties.
The commission did not merely ratify the density of housing requested by the applicant.
Instead, it reduced the density request based upon concerns expressed by the commission, and those testifying at the public hearing.
Although residential areas are located in close proximity to the PDD, the immediate area also includes a train station, restaurants, retail stores, multi-family homes, boat storage, and commercial fishing concerns. (ROR 61, p. 166-68).
The record fails to support the allegation that the commission acted arbitrarily, illegally or unreasonably.
The commission had before it evidence of traffic patterns from experts engaged by the proponents, and those of its own choosing.
Traffic patterns, including the reconfiguration of access roads, were analyzed and evaluated by the commission.
The record reveals a conscientious commission, attempting to put in place regulations aimed at dealing with a unique parcel, and the decaying buildings it contains.
The action taken is consistent with the "flexibility" envisioned by the provisions of § 35 of the regulations.
The detailed findings required by § 35 are reflected in the CT Page 14093 approval, and supported by the record. (ROR 94).
Following extensive deliberations, and a full and fair public hearing process, the defendant Branford Zoning Commission unanimously created the PDD.
This court will not disturb the thoughtful, well-considered effort of the commission in establishing the PDD which is the subject of this appeal.
The appeal of the plaintiffs is DISMISSED.
___________________ Radcliffe, J. CT Page 14094