STATE OF CONNECTICUT ET AL. *v.* STATE
EMPLOYEES' REVIEW BOARD ET AL.
(15358)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued November 6, 1996—officially released January 7, 1997

*Laurie Adler*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend* and *Maria C. Rodriguez*, assistant attorneys general, for the appellants (plaintiffs).

*David A. Zipfel*, for the appellee (defendant Daniel Cawley).

CALLAHAN, C. J. The issue in this appeal is whether the Personnel Act, General Statutes §§ 5-193 through 5-269, grants the state employees' review board (board) jurisdiction to address misclassification claims in layoff appeals. The plaintiffs, the state of Connecticut, the state department of public safety (public safety) and the state department of administrative services (administrative services), appeal from the judgment of the trial court dismissing their appeal and concluding that the board possesses jurisdiction to entertain misclassification claims. We reverse the judgment of the trial court.

The factual circumstances were related in an earlier opinion of this court in *State* v. *State Employees' Review Board*, 231 Conn. 391, 650 A.2d 158 (1994). We will reiterate only those facts necessary for the proper consideration of the present appeal. In May, 1986, public safety hired the defendant, Daniel Cawley,[1] as a data

---

[1] References to the defendant in this opinion are to Cawley, the state employee who was laid off by public safety. The board, which was also served as a defendant in this action, took no position in the trial court phases of this case and submitted no brief in this appeal.

processing manager 3 (DPM 3). The job description for a DPM 3 required that the worker "direct a 'major' data processing installation and supervise an assigned staff of managers, supervisors, technical and clerical personnel." Id., 394 n.3. When he was initially hired, the defendant supervised thirty to thirty-four employees and all the activities of public safety's data processing unit. Over the next several years, the defendant's supervisory responsibilities were gradually diminished. By the spring of 1990, he supervised only eighteen to twenty employees. Effective November 30, 1990, the defendant was relieved of all supervisory responsibilities and was reassigned to special projects that he carried on largely by himself. The defendant's supervisory responsibilities were transferred to a data processing manager 1 (DPM 1), a position of lower rank and salary than DPM 3. This shift in duties was intended to be, and became in fact, permanent.

In early 1990, Deborah Fazzina, a classification specialist employed by administrative services, advised public safety to make changes in its data processing unit including abolishing or reclassifying the DPM 3 position to a nonmanagerial position once it was vacated. When the defendant was permanently reassigned to performing nonsupervisory tasks in November, 1990, public safety did not review the classification of his position, but instead allowed the defendant's DPM 3 classification to continue. The defendant also continued to be paid as a DPM 3 until public safety laid him off on May 31, 1991.[2] At the time of his layoff, the defendant was the only public safety employee classified as a DPM 3.

---

[2] The maximum salary for a DPM 3 was $81,320.03. The maximum salary for a DPM 1 was $60,758.15. The maximum salary for a nonmanagerial data processing specialist was less than $60,758.15.

The defendant appealed his layoff to the board pursuant to General Statutes § 5-202,[3] seeking a determination

[3] General Statutes § 5-202 currently provides in relevant part: "Appeal by employee. (a) Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subsection (r) of section 5-196 may appeal to the Employees' Review Board if he or she receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed, or is aggrieved as a result of alleged discrimination, or unsafe or unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute, regulation or rule. Such employee must have complied with preliminary review procedures, except as otherwise provided in subsection (k) of this section. Such an appeal shall be submitted to the board within thirty days of the completion of the final level of the preliminary review procedure, provided the first level of the procedure shall have been initiated no later than thirty calendar days from the date of the alleged violation, except that in cases of dismissal, demotion or suspension the grievance must be submitted directly to the third level of the procedure and shall have been initiated no later than thirty calendar days from the effective date of such action.

"(b) Upon receiving an appeal, the board shall assign a time and place for a hearing and shall give notice thereof to the parties concerned. The hearing panel shall not be bound by technical rules of evidence prevailing in the courts. If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied. The hearing panel shall have the power to direct appropriate remedial action and shall do so after taking into consideration just and equitable relief to the employee and the best interests and effectiveness of the state service. The hearing panel shall render a decision within sixty calendar days from the date of the conclusion of the hearing. . . .

"(e) *An employee laid off or dismissed by reason of economy, lack of work, insufficient appropriation, change in departmental organization or abolition of position may file an appeal with the board only on the grounds that the order of layoff or dismissal has not been determined in accordance with the provisions of section 5-241*, provided such employee has initiated the third level of the preliminary review procedure within thirty calendar days of the effective date of such layoff or dismissal.

"(f) *All matters involving* examination, including application rejection, type of examination or results, *compensation for class or classes, establishment of a new class or classes, classification of a position*, occupational group or career progression level, compliance with health and safety standards and the Connecticut Occupational Safety and Health Act or alleged discrimination in cases where an appeal has been filed with the Commission on Human Rights and Opportunities, *shall not be appealable under this section*. . . .

"(*l*) Either the commissioner of administrative services or any employee aggrieved by a decision of the Employees' Review Board may appeal there-

that the layoff was not in compliance with General Statutes § 5-241,[4] which requires that the least senior employee within a position classification slated for layoff be laid off first. He contended that his reassignment should have led administrative services to reclassify his

from in accordance with section 4-183. The board may intervene as a party in any appeal of its decision. Any employee who prevails in a decision of the Employees' Review Board shall be entitled to recover court costs and reasonable attorney's fees if such decision is appealed by the commissioner of administrative services and affirmed by the court in such appeal." (Emphasis added.)

[4] General Statutes § 5-241 provides: "Order of layoffs. Notice. Placement on reemployment list. (a) No employee in the classified service who has been performing his duties in a satisfactory manner as shown by the records of the department, agency or institution in which he has been employed shall be dismissed or laid off from his position because of lack of work, economy, insufficient appropriation, change in departmental organization, abolition of position or any cause other than disability, delinquency, incompetency, misconduct or neglect of duty, if any other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution. For the purposes of this section, the employment security division may, at the discretion of the labor commissioner, be excluded from the remainder of the labor department and deemed to be a separate agency.

"(b) An appointing authority desiring to lay off an employee shall give him not less than two weeks' notice in writing, stating the reason for such action, except that in the case of an employee, as defined in section 5-196, who is not covered by a collective bargaining agreement and who has been in the classified service for (1) at least five but not more than ten years, the appointing authority shall provide at least four weeks' notice, (2) more than ten but not more than fifteen years, the appointing authority shall provide at least six weeks' notice, (3) more than fifteen years, the appointing authority shall provide at least eight weeks' notice. A copy of such notice shall immediately be forwarded to the commissioner of administrative services. The commissioner shall arrange to have the employee transferred to a vacancy in the same or a comparable class or in any other position the employee is qualified to fill in any department, agency or institution. If there is no vacancy available or the employee refuses to accept the transfer, the commissioner shall cause the name of such employee to be placed on the reemployment list for the appropriate class for which he has attained permanent status, or has the ability to qualify, as determined by the commissioner. During the period he is entitled to remain on the reemployment list, such an employee shall be rehired in the classification from which he was laid off or for which he is qualified, as vacancies occur, in the reverse order of layoff."

position as a DPM 1 or a lesser classification, and that, because of his seniority over other DPM 1 and lesser classified employees in public safety, public safety should have retained him and laid off other employees first.

The board concluded that because public safety had not reviewed the defendant's position pursuant to administrative services' recommendation, the board could not determine either his proper classification or his relative seniority within that classification. Therefore, the board concluded that the layoff was improper as "arbitrary or taken without reasonable cause." The board ordered public safety, with the assistance of administrative services, to review the classification of the defendant's position as of the time he was assigned new duties, and, on the basis of such duties, to determine the appropriate classification of the position. The board's order directed public safety, upon completion of the classification review and reclassification of the defendant, if that should be appropriate, to follow its normal procedures in determining which positions should have been abolished and which employees occupying those positions should have been laid off. The board ordered that if the result of the analysis indicated that the defendant had been improperly laid off, he was to be reinstated and awarded appropriate back pay, seniority and other benefits. The board did not retain jurisdiction over the dispute.

The plaintiffs appealed the board's decision to the trial court pursuant to General Statutes §§ 5-202 (*l*) and 4-183. The trial court concluded that the board's decision was not a final judgment within the meaning of § 4-183 and, therefore, was not appealable. It did, however, sustain the appeal in part, and ordered a modification of the board's decision, requiring the board to retain jurisdiction over the defendant's claim. We reversed the judgment of the trial court in *State* v. *State Employees'*

*Review Board,* supra, 231 Conn. 391, concluding that the board's decision constituted an appealable final judgment, and we remanded the case for further proceedings.

On remand, the trial court concluded that the board's decision was within the scope of its statutory authority and dismissed the plaintiffs' appeal. The court agreed with the board's conclusion that it need not accept the state's classification of a position, but may properly order a state agency to review the classification of a position before ruling on whether a layoff was in accord with § 5-241. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The plaintiffs argue that the board lacked jurisdiction over the present case because the statutory framework does not permit the board to address classification issues in layoff appeals. The plaintiffs assert that General Statutes § 5-200 (n), which does not contemplate board review, constitutes the sole statutory avenue for employees to have the classifications of their positions reviewed. Additionally, the plaintiffs assert that General Statutes § 5-202 (f), as amended by Public Acts 1994, No. 94-194 (P.A. 94-194), specifically excludes classification issues from the board's jurisdiction. They contend that P.A. 94-194, which was enacted after the present case arose, was a clarifying amendment that should be applied retroactively to causes of action arising before its effective date, and that its enactment serves to confirm their argument that the board never had jurisdiction over classification issues. The plaintiffs argue that the board should have denied the defendant's grievance pursuant to § 5-241 (a) because the defendant was the only, and hence the least, senior public safety employee in the DPM 3 classification.

We agree with the plaintiffs that P.A. 94-194 was an amendment that served to clarify § 5-202 (f) and, as such, should be applied retroactively. We therefore conclude that the board lacked jurisdiction to entertain the defendant's misclassification claim, and, a fortiori, lacked jurisdiction to order administrative services and public safety to review the classification of the defendant's position.

We first note the scope of our review of the board's decision. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Citations omitted; internal quotation marks omitted.) *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 678, 628 A.2d 957 (1993). Cases that present pure questions of law, however, invoke "a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.; see also *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 263, 579 A.2d 505 (1990). "Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." *Dept. of Administrative Services* v. *Employees' Review Board*, supra, 678–79; see *Lieberman* v. *State Board of Labor Relations*, supra, 263. The board's determination that § 5-202 granted it jurisdiction to entertain misclassification claims has not been subject to judicial review and is a pure question of law involving the interpretation of the relevant statutory provisions. Consequently, we afford the board no special deference in our review of its decision.

We begin by sketching the statutory landscape pertinent to employee appeals of layoff decisions to the board. General Statutes § 5-201[5] establishes the board and empowers it to hear and act upon appeals filed in accordance with § 5-202. Section 5-202 (e)[6] affords employees who have been laid off for economic reasons the right to appeal the determination to the board. Section 5-202 (e) provides that such an appeal may be based only on the ground that the order of layoff was not determined in accordance with the provisions of § 5-241. Section 5-241 (a)[7] establishes a limited system of seniority-based bumping and provides that no employee in a particular classification can be laid off for economic reasons if there are other employees in the same agency and classification, performing comparable duties, who possess less seniority. Section 5-202 (f)[8] sets forth a list of "matters" that are not appealable to the board. In 1994, after the defendant had brought this appeal, the General Assembly amended § 5-202 (f), adding "classification of a position" to that list.[9]

The statutes allocate to administrative services the responsibility regarding classification of positions. Gen-

[5] General Statutes § 5-201 provides in relevant part: "Employees' Review Board. (a) There shall be an Employees' Review Board consisting of seven members, at least one of whom shall be an attorney with experience in administrative or labor law. . . .

"(b) The board shall hear and act upon appeals filed with it in accordance with section 5-202. The board, or any three of its members designated by the board, may serve as a hearing panel and render a decision. . . ."

[6] See footnote 3.

[7] See footnote 4.

[8] See footnote 3.

[9] Prior to the 1994 amendment, General Statutes (Rev. to 1993) § 5-202 (f) had provided: "*All matters involving* examination, including application rejection, type of examination or results, *compensation for class or classes or duties, establishment of a new class or classes,* occupational group or career progression level, compliance with health and safety standards and the Connecticut Occupational Safety and Health Act or alleged discrimination in cases where an appeal has been filed with the human rights commission, *shall not be appealable under this section.*" (Emphasis added.)

eral Statutes § 5-200[10] charges administrative services with the responsibility for establishing and maintaining classes of positions for all state employees holding positions in the classified service. Section 5-200 (b) provides that administrative services "shall review position classifications in accordance with subsection (c) of section 5-206." General Statutes § 5-206 (c)[11] provides that administrative services "periodically shall review the work performed by employees in the classified service and shall issue such orders as are necessary to have such employees assigned to work in accordance with the classifications of their positions or to have their classifications changed to comply with their work . . . ." Finally, § 5-200 (n)[12] allows employees to raise issues concerning the classification of their positions by submitting written data and arguments to the commissioner of administrative services, who may hold a

[10] General Statutes § 5-200 provides in relevant part: "(l) The commissioner shall establish classes of positions, occupational groups and career progression levels for all state employees holding positions in the classified service.

"(m) The commissioner shall maintain current compensation schedules pertaining to all employees specified in subsection (k) of this section and a comprehensive plan of position classifications pertaining to all employees specified in subsection (l) of this section. . . ."

[11] General Statutes § 5-206 (c) provides: "The commissioner of administrative services periodically shall review the work performed by employees in the classified service and shall issue such orders as are necessary to have such employees assigned to work in accordance with the classifications of their positions or to have their classifications changed to comply with their work, provided any employee, whose classification, status or compensation is affected, shall be given reasonable opportunity to be heard prior to the issuance of any such order."

[12] General Statutes § 5-200 (n) provides: "*Any interested employee,* his representative or any appointing authority *may submit to the commissioner written data, views, arguments or request for a hearing in regard to specified position classifications or allocation of a class of positions to the compensation schedule.* Within two months after the commissioner shall have received such data, views or arguments or shall have held any requested hearing, he shall forward to such employee, representative or appointing authority his written decision thereon, together with all written materials submitted to him by the interested employee or his representative and such other information as he considers appropriate." (Emphasis added.)

hearing if necessary. On its face, § 5-200 (n) affords a remedy to an employee who claims his position has been misclassified.

With the above statutory framework in mind, we proceed to what we conclude to be the dispositive issue in this appeal—the General Assembly's intention in enacting P.A. 94-194, which added to the list of "matters" that cannot be appealed to the board "[a]ll matters involving . . . classification of a position . . . ." Pursuant to the current version of § 5-202 (f), as it incorporates P.A. 94-194, an employee in the defendant's position cannot raise issues concerning the classification of his position in an appeal to the board. Because the board can act only upon appeals filed in accordance with § 5-202, and § 5-202 (f) prohibits employees from appealing matters of classification, the board lacks jurisdiction to entertain an appeal by an employee, such as the defendant, who argues that his position has been misclassified. Under the existing statutory framework, the only recourse for an employee who believes that his position has been misclassified is an appeal to the commissioner of administrative services pursuant to § 5-200 (n).[13] The defendant filed this appeal with the board prior to the legislature's enactment of P.A. 94-194 and argues that P.A. 94-194 does not apply to his case. The plaintiffs disagree. The dispositive issue, therefore, is whether the General Assembly's passage of P.A. 94-194 signaled a change in the law, or merely clarified the existing law.

We presume that, "in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative decla-

---

[13] See footnote 12.

ration of the meaning of the original act." (Internal quotation marks omitted.) *Kluttz* v. *Howard*, 228 Conn. 401, 409, 636 A.2d 816 (1994); see *Shelton* v. *Commissioner of Environmental Protection*, 193 Conn. 506, 513–14, 479 A.2d 208 (1984). An amendment that is intended to clarify the original intent of an earlier statute "necessarily has retroactive effect." *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987); see *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985).

"To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent." (Internal quotation marks omitted.) *Reliance Ins. Co.* v. *American Casualty Ins. Co. of Reading, Pennsylvania*, 238 Conn. 285, 290, 679 A.2d 925 (1996). "To determine legislative intent, it is often useful to examine the title of a proposed bill . . . and the purpose the legislature intended to accomplish by its enactment. . . ." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 25, 670 A.2d 851 (1996), quoting *State* v. *Mattioli*, 210 Conn. 573, 577–78, 556 A.2d 584 (1989). " 'The title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . .' " *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 405, 528 A.2d 805 (1987).

The history of P.A. 94-194 demonstrates that the legislature intended the 1994 amendment of § 5-202 (f) to be a clarification of the existing law rather than a change in the law. The title of the bill that became P.A. 94-194 was: "An Act *Clarifying* the Types of Matters Appealable by State Employees To the Employees' Review Board and Extending the Time for Appeals To the Board." (Emphasis added.) The title was read by the clerks of both the House of Representatives and the Senate on the floor of each chamber prior to the enactment of the legislation. 37 H.R. Proc., Pt. 21, 1994 Sess.,

pp. 7759–64; 37 S. Proc., Pt. 7, 1994 Sess., pp. 2199–2201, 2223–24. In discussing the act on the floor of the House of Representatives, Representative Michael P. Lawlor stated: "By way of explanation, this relates only to the matters which State employees who are not covered by collective bargaining agreements, the types of matters they can bring to the Employees' Review Board. It . . . prohibits the Board from hearing grievances over position classification . . . ." 37 H.R. Proc., Pt. 21, 1994 Sess., p. 7762. That the title of P.A. 94-194 specifically denoted the act as a clarifying act and the designation was brought to the attention of the members of both the House and Senate before passage strongly suggests that the General Assembly enacted P.A. 94-194 to clarify § 5-202 (f), and not effectuate a change in the law.

The timing of the legislature's enactment of P.A. 94-194 further supports our construction of the act as a clarifying amendment. The board issued its decision in this case on April 25, 1992. The trial court rendered its initial decision on October 13, 1993. Public Act 94-194 was introduced in the February legislative session of 1994, only four months after the trial court's decision. Our decision reversing and remanding the case to the trial court was announced on December 6, 1994.[14] A search of the published and unpublished trial court opinions reveals that the trial court's initial opinion in this case on October 13, 1993, appears to be the first trial court opinion to call attention to the issue of whether the board has jurisdiction to entertain misclassification claims in layoff appeals. Although in that opinion the trial court did not decide the issues concerning the board's jurisdiction, but rather focused on the final judgment issue we addressed in *State* v. *State Employees' Review Board,* supra, 231 Conn. 391, the court

---

[14] We did not discuss the legislature's enactment of P.A. 94-194 in *State* v. *State Employees' Review Board,* supra, 231 Conn. 391, because we did not reach the merits of the case in that opinion.

nonetheless set forth the factual and procedural circumstances of the case and mentioned the "statutory construction issues that [the plaintiffs] prematurely seek to have adjudicated in this proceeding." *State* v. *State Employees' Review Board,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92703246 (October 13, 1993). Moreover, two trial courts in 1992 addressed issues concerning the board's jurisdiction. In *State* v. *Employees' Review Board,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 701604 (April 27, 1992), and *State* v. *Employees' Review Board,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 701585 (May 29, 1992), the courts addressed the issue of whether § 5-202 (f) excluded from the board's jurisdiction all claims involving compensation. In both cases, the courts concluded, contrary to the board, that § 5-202 (f) excluded from the board's jurisdiction the compensation claims pressed by the employees in those cases.

In the past, this court has accorded weight to prompt legislative amendments made in response to judicial pronouncements concerning statutory law. "If an amendment is enacted soon after controversies arise regarding the interpretation of the prior act, ' "it is logical to regard the amendment as a legislative interpretation of the original act . . . ." ' " *Turner* v. *Turner,* 219 Conn. 703, 717, 595 A.2d 297 (1991); *State* v. *Blasko,* 202 Conn. 541, 558, 522 A.2d 753 (1987); see also 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1985) § 22.31. "The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we had previously interpreted a statute to confer." *State* v. *Blasko,* supra, 558.

The activity in the trial courts prior to 1994 concerning the scope of the board's jurisdiction alerted the legislature to a "controversy" regarding the proper

interpretation of § 5-202 (f). The legislature's prompt proposal of P.A. 94-194 following the emergence of this controversy is persuasive evidence that the act was meant to clarify § 5-202 (f), not change it.[15] Because we conclude that P.A. 94-194 was a clarifying amendment,

---

[15] Professor Howard Sacks, a member of the board and author of the board's opinion in this case, testified to the committee on labor and public employees in support of P.A. 94-194. Sacks' testimony supports our conclusion that P.A. 94-194 was a clarifying amendment in response to trial court confusion concerning the board's jurisdiction. Sacks testified in a prepared written statement as follows:

"Presently, Section [5-]202 (f), excluding several types of cases from the grant of jurisdiction conferred by the general provision in § [5-]202 (a), excludes some kinds of cases involving compensation. The Board believes that other types of compensation cases are within our jurisdiction, and we have occasionally given relief in these cases. *However, lower courts have disagreed with us, and have set aside our decisions. We seek a clarifying amendment, as detailed below.*

\* \* \*

"The present statute, CGS § 5-202 (f), exempts from Board jurisdiction 'matters involving . . . compensation for class or classes or duties.' Although the legislature could have simply exempted matters involving compensation, it did not. It only exempted particular types of compensation issues. *Nonetheless, lower courts have read the statute to wipe out Board power over all compensation issues. This appears to be a misreading of the legislature's intentions.*

"To remedy this situation, § 5-202 (f) should be amended so as to delete '[or] duties.' This modest change would enable the Board to handle cases of the type described above.

*"On the other hand, the Board does not wish to tinker with issues of compensation for a class of positions, or the classification, and hence, compensation, of a particular position within an established class. There is already a remedy for alleged misclassification of a position; see Conn. Gen. Stat. § 5-200 (p) [currently § 5-200 (n)]. Accordingly, the present language exempting from Board jurisdiction compensation for a class should be retained. Moreover, the section should be amended so as to clearly exempt from our jurisdiction 'classification of a position.'* . . .

*"If these two changes were made, the Board could deal with appropriate cases of unlawful State action involving compensation, while not interfering with necessary State discretion on such matters as the appropriate classification of a particular position.* . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1994 Sess., pp. 292–93, testimony of Professor Howard Sacks, member, Connecticut state employees' review board.

The legislature removed the phrase "or duties" from § 5-202 (f) in P.A. 94-194, thus clarifying the jurisdictional issue concerning compensation cases that had been addressed by the trial courts in 1992.

it "must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) *Kluttz* v. *Howard,* supra, 228 Conn. 409. Accordingly, we conclude that the board did not have jurisdiction to entertain the defendant's misclassification argument, and, a fortiori, that the board did not have the power to order administrative services and public safety to review the classification of the defendant's position.

The retroactive nature of clarifying legislation has limits, however, and "must not operate in a manner that would unjustly abrogate vested rights." (Internal quotation marks omitted.) *State* v. *Magnano,* supra, 204 Conn. 284. "A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." *Family Financial Services, Inc.* v. *Spencer,* 41 Conn. App. 754, 766, 677 A.2d 479 (1996), citing *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 71, 441 A.2d 68 (1981). We conclude that the defendant has no vested right that would enable him to argue, in a layoff appeal to the board, that his position was misclassified. The retroactive application of P.A. 94-194, therefore, does not abrogate any vested rights.

Moreover, an analysis of §§ 5-200, 5-202 and 5-241, conducted in light of fundamental rules of statutory construction, leads to the conclusion that classification issues were not and are not appealable to the board, and that P.A. 94-194 merely clarified the existing law. "It is a well-settled principle of [statutory] construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . We are obligated, furthermore, to read statutes together when they relate to the same subject matter." (Citations omitted; internal quotation marks

omitted.) *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council*, 215 Conn. 474, 482–83, 576 A.2d 510 (1990). "This is because of the presumption that the legislature intended to create a harmonious body of law." *Dept. of Administrative Services* v. *Employees' Review Board*, supra, 226 Conn. 679. Also, "[a] statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." (Internal quotation marks omitted.) *Chairman, Criminal Justice Commission* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991). Finally, "[e]lementary rules of statutory construction require the presumption that the legislature did not intend to enact superfluous legislation." *State* v. *Ellis*, 197 Conn. 436, 472–73, 497 A.2d 974 (1985), on appeal after remand, *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990).

By allocating responsibility for the classification system to administrative services, and providing employees with a specific avenue by which to appeal classification issues to administrative services, the legislature expressed its intention that administrative services would constitute the controlling authority over such issues. Reading the statutes together, as we must, leads to the conclusion that the legislature always intended that § 5-200 (n) be the only medium through which an employee can raise the issue of classification. We must presume that, by providing a specific procedure to raise and resolve classification issues in § 5-200 (n), the legislature intended state employees to utilize that procedure, rather than some other procedure. See *Chairman, Criminal Justice Commission* v. *Freedom of Information Commission*, supra, 217 Conn. 200; *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council*, supra, 215 Conn. 482–83. In addition, our construction of the statutes avoids render-

ing § 5-200 (n) superfluous in situations in which an employee's position should properly be reclassified to a lower classification.[16] If we were to conclude that the statutes allow employees to raise classification issues in layoff appeals, no incentive would exist to compel employees in such situations to utilize the more specific and express procedures of § 5-200 (n). Indeed, an employee, such as the defendant, whose position might properly have been reclassified to a lower classification with a lower salary, would have no reason to utilize § 5-200 (n) to obtain reclassification, and a corresponding pay cut, if that employee could simply wait to challenge the classification in a layoff appeal to the board.[17]

At oral argument, counsel for the defendant repeatedly asserted this was not a classification case but was a layoff case in which the board was prevented from performing its statutory duty because of administrative services' failure to classify the defendant's position properly. The defendant's argument focuses on public safety's transfer of the defendant's day-to-day duties to a DPM 1 on November 30, 1990. According to the defendant, public safety's shifting of his duties amounted to a de facto reclassification of the defend-

---

[16] We rely on the same rules of statutory construction discussed above to dispose of the defendant's argument that § 5-202 (b) confers upon the board the power to remedy all employer practices that it concludes are "arbitrary or taken without reasonable cause." Section 5-202 (b) provides, in relevant part, that if "a majority of the hearing panel [of the board] determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied." If we were to adopt the defendant's broad construction of § 5-202 (b), the more specific provisions of § 5-202 (c) and (f) dealing with appeals by laid off employees would be rendered meaningless, because the board would then possess the power to sustain a laid off employee's appeal without regard for the specific dictate in § 5-202 (e) that such appeals may only be based on noncompliance with § 5-241. We therefore find unpersuasive the defendant's argument that § 5-202 (b) granted the board the power to sustain any appeal where the board concludes that the employer action was arbitrary or taken without reasonable cause.

[17] See footnote 19.

ant's position, notwithstanding the fact that administrative services continued to classify the defendant's position as a DPM 3. The defendant argues that he did not fall into any classification following November 30, 1990, because his prior day-to-day duties had been shifted to a DPM 1 and he was permanently reassigned to performing special projects. Because he did not fall into any classification, the defendant contends, the board was unable to perform its § 5-241 (a) function, which is to assess whether the defendant was the least senior employee in his classification. We find this argument circuitous and unpersuasive.

In essence, the defendant asked the board, and now asks this court, to look beyond the classification of the defendant's position listed in administrative services' records and determine whether that classification was consistent with the duties the defendant was performing.[18] The board should have declined the defendant's invitation to do so. The legislature granted

---

[18] In support of this request, the defendant cites *Chotkowski* v. *Connecticut Personnel Appeal Board*, 176 Conn. 1, 404 A.2d 868 (1978), for the proposition that this court can and will "go beyond the mere assertion of the State and explore the true facts." The defendant's reliance on *Chotkowski* to support the preceding proposition is misplaced. Although in *Chotkowski* we concluded that the state employee in that case was a "permanent employee" in the classified service, a conclusion that ran contrary to an erroneous designation of his position in the state personnel records, we based that conclusion on a separate statutory section providing that all offices or positions in the state service were positions in the classified service unless the position was contained in a list of positions exempted from the classified service. Id., 4. Since the employee's position was not listed among the exemptions from the classified service, we concluded that his position was in the classified service, notwithstanding the mistaken designation in the state personnel records. Id. In the present case, the defendant cites no separate statutory authority upon which we may base a conclusion that the actual classification of the defendant's position was different than the classification noted in administrative services' records. The proper procedure for the defendant to obtain judicial review of administrative services' classification of his position was a § 4-183 appeal from an administrative services' determination of a § 5-200 (n) appeal. See footnote 12.

authority over the classification of positions to adminis-
trative services, not to individual state agencies. Sec-
tions 5-200 (b) and 5-206 (c) charge administrative
services with the responsibility of periodically evaluat-
ing positions to ensure that they are classified properly.
No statutory authority exists to allow other individual
state agencies to reclassify positions within the individ-
ual agency, de facto or otherwise. Administrative ser-
vices' classification of a position controls unless and
until administrative services reclassifies the position.
Sections 5-200 (b) and 5-206 (c) do not require, more-
over, that administrative services' classification of a
position be consistent at all times with the specific
duties that the employee holding that position is per-
forming. Such a requirement would be impossible to
enforce in light of the shifting of duties that normally
occurs in the modern workplace. Section 5-200 (n)
exists for that very reason and provides employees a
means for compelling administrative services to review
their position classifications to ensure proper classifica-
tion if they believe they are improperly or unjustly clas-
sified.[19] The defendant's argument, taken to its logical
extreme, would require administrative services to
review the classification of every position slated for
layoff prior to the actual layoff action to ensure that the
classification was proper. In addition, the defendant's

---

[19] Indeed, in the present case, the defendant had a six month period—from
November 30, 1990, to May 31, 1991—during which he could have utilized
the provisions of § 5-200 (n) to compel administrative services to review
his position classification. During this six month period, the defendant
received a salary commensurate with the DPM 3 classification, even though
the nonmanagerial duties he was performing were not consistent with the
DPM 3 classification. The maximum salary for a nonmanagerial data pro-
cessing specialist was at least $20,561.88 less than the salary of a DPM 3.
See footnote 2. The defendant thus was forced to choose whether to continue
to enjoy the salary of a DPM 3, but remain vulnerable to a layoff, or to seek
a reclassification and corresponding pay cut, but be protected in the event
of a layoff. The defendant chose to accept the higher salary and correspond-
ing risk of layoff.

construction of the statutes would shift classification issues away from administrative services, requiring the board to make determinations in every layoff case as to whether an employee's position was properly classified. The statutes, however, do not contemplate having the board second-guess administrative services' determinations concerning classification issues. As previously noted, an employee's proper avenue of appeal for misclassification is § 5-200 (n). If the employee is aggrieved by the decision of administrative services, he or she may appeal that decision to the Superior Court pursuant to § 4-183. In any event, the road to judicial review of classification issues goes through administrative services, not the board, because the legislature conferred authority over the classification system on administrative services.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion the other justices concurred.