# COREGIS INSURANCE COMPANY *v.* FLEET NATIONAL BANK
# (AC 22136)

Lavery, C. J., and Schaller and Peters, Js.

Argued November 27, 2001—officially released March 26, 2002

*Gerald L. Garlick,* with whom was *Kenneth M. Rozich,* for the appellant (defendant).

*Eric J. Foy,* with whom, on the brief, was *Joel M. Fain,* for the appellee (plaintiff).

*Opinion*

PETERS, J. This is a case of statutory construction. Under General Statutes § 42a-4-401, a bank may charge against a customer's account only those items that are "properly payable."[1] The sole issue in this appeal is whether, under General Statutes §§ 42a-3-110 (d) and 42a-3-205 (d), a check made payable in the alternative to one of several payees authorizes a payor to honor the check, even if it contains two unauthorized signatures, if the check is presented for payment bearing one valid endorsement. We hold that the one valid endorsement was sufficient and reverse the contrary judgment of the trial court.

The following factual history is relevant to our resolution of this appeal. In October, 1996, Joseph Walton sustained physical injuries at West Feliciana High School where he was a student. Attorney Trudy Avants was retained by Walton's mother, Delores Carpenter, to represent them in a personal injury action against the

---

[1] General Statutes § 42a-4-401 (a) provides in relevant part: "A bank may charge against the account of a customer an item that is properly payable from that account . . . . An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."

Under General Statutes § 42a-4-104, a check is an "item."

West Feliciana school board and the plaintiff, Coregis Insurance Company.

In August or September of 1996, the plaintiff and Avants agreed to settle the claim for $50,000. On September 11, 1996, Avants and two unknown individuals representing themselves to be Carpenter and Walton signed settlement documents. The plaintiff issued a settlement check made payable to:

"TRUDY AVANTS ATTORNEY FOR

MINOR CHILD JOSEPH WALTON,

MOTHER DELORES CARPENTER

11762 S. HARRELLS FERRY ROAD #

E

BATON ROUGE LA 70816"

The check subsequently was endorsed by Avants and by two unknown individuals who fraudulently signed the names of Carpenter and Walton. The settlement check was cashed at Hibernia Bank in Baton Rouge and later was presented for payment to the defendant, Fleet National Bank. The defendant honored the check and charged the plaintiff's account in that amount.

On May 19, 1998, the plaintiff filed a complaint alleging that the check was not properly payable under § 42a-4-401 (a) because the check contained unauthorized endorsements. Both parties filed motions for summary judgment, supported by proper documentation. Each party filed a memorandum of law in opposition to the other's motion. After oral argument, the trial court denied the defendant's motion and granted the plaintiff's cross motion for summary judgment.

In its memorandum of decision, the court held that the language describing the payees was ambiguous and that the check thus should be treated as payable in the

alternative under § 42a-3-110 (d).[2] The court stated that Avants' signature was, therefore, a sufficient endorsement to permit negotiation of the check. Nonetheless, in light of the other unauthorized signatures, the court held that the check was not properly payable under § 42a-4-401.

On appeal, the defendant claims that the court improperly denied its motion for summary judgment by concluding (1) that the check, which was payable in the alternative, was not properly payable even though it contained one valid signature, because the other signatures were unauthorized and (2) that the additional unauthorized endorsements were not "anomalous" under General Statutes § 42a-3-205 (d).[3] These two claims merge into one claim about the payability of the disputed check under the provisions of the Uniform Commercial Code as adopted in this state in General Statutes § 42a-1-101 et seq.[4]

The standard by which we review a trial court's decision to grant or deny a motion for summary judgment is well established. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material

[2] General Statutes § 42a-3-110 (d) provides in relevant part: "If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. . . . If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively."

[3] General Statutes § 42a-3-205 (d) provides: " 'Anomalous endorsement' means an endorsement made by a person who is not the holder of the instrument. An anomalous endorsement does not affect the manner in which the instrument may be negotiated."

[4] The defendant also claims that, in granting the plaintiff's motion for summary judgment, the court improperly made findings of fact that were not presented by the parties in their respective motions. In light of our resolution of the defendant's first two claims, we need not reach this third claim.

fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 607, 783 A.2d 462 (2001). Because the relevant facts are undisputed, the only question before us is which party was entitled to judgment as a matter of law. Resolution of that question requires statutory construction and our review is therefore plenary. *Boynton* v. *New Haven*, 63 Conn. App. 815, 819, 779 A.2d 186, cert. denied, 258 Conn. 905, 782 A.2d 136 (2001).

Our approach to this issue is guided by well established principles of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 755–56, 674 A.2d 1313 (1996). Furthermore, it is an "elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 636, 583 A.2d 906 (1990). When statutes relate to the same subject matter, they must be read together and "specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997).

The questions raised in this appeal relating to the negotiability and payment of instruments are governed

by the provisions of the Uniform Commercial Code as adopted in General Statutes § 42a-1-101 et seq. Under these statutes, only a "holder" or someone who has the rights of a holder may properly present an instrument for payment. General Statutes § 42a-3-301. A "holder" of an instrument that is payable to an identified person is defined as "the person in possession . . . if the identified person is in possession." General Statutes § 42a-1-201 (20). A check payable to more than one person may be payable jointly, requiring valid signatures of all payees, or it may be payable in the alternative, in which case it is "payable to any of them and may be negotiated . . . by *any or all of them* in possession of the instrument." (Emphasis added.) General Statutes § 42a-3-110 (d). In the case of ambiguity, § 42a-3-110 (d) treats the check as payable in the alternative. According to General Statutes § 42a-3-205 (d), any endorsement made "by a person who is not the holder of the instrument" is "anomalous" and "does not affect the manner in which the instrument may be negotiated."

The trial court properly determined that the language of the settlement check was ambiguous as to whether it was payable jointly or payable in the alternative and that, due to that ambiguity, the check must be treated as payable in the alternative. Therefore, the check was properly negotiable by *any or all* of the payees in possession. The court acknowledged that Avants was one of the payees in possession and thus her signature alone was sufficient to negotiate the check.

Nonetheless, the court held that the two unauthorized signatures invalidated the one otherwise proper endorsement. The court relied on comment one to § 42a-4-401, which states that "[a]n item containing a forged drawer's signature or forged [e]ndorsement is

not properly payable."[5] General Statutes Ann. § 42a-4-401, comment 1 (West 1990). The court held that the signatures constituted "endorsements" as defined by General Statutes § 42a-3-204 and that their forgery made the instrument not properly payable.[6] Furthermore, the court held that the unauthorized endorsements did not fall within the definition of "anomalous" endorsements because, although the two unknown parties were not holders, they were "acting as" holders and their unauthorized signatures impaired the negotiability of the check.

The defendant challenges the court's conclusion regarding the effect of the unauthorized endorsements. The defendant argues that those signatures were "anomalous" endorsements because they were made by persons who were not holders and, therefore, did not affect the negotiability of the instrument. We agree.

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). Section 42a-3-205 (d) provides that an anomalous endorsement is an "endorsement made by a person who is not the holder of the instrument" and that it "does not affect the manner in which the instrument may be negotiated."

---

[5] The court cited to official comment one to § 4-401 of the A.L.I. Uniform Commercial Code. We cite to the identical language in comment one to General Statutes Ann. § 42a-4-401 (West 1990) because title 42a is the enactment of the Uniform Commercial Code in Connecticut.

[6] General Statutes § 42a-3-204 (a) provides in relevant part: " 'Endorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms or the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement."

The court reasoned that the unauthorized signatures did not fall within that definition because the unknown signers were "acting as" holders. The court, however, provided no support for construing § 42a-3-205 (d) to exclude individuals who were not holders, but who were merely *acting as holders.* Moreover, the plain language of the statute fails to support the court's interpretation.

We are similarly unpersuaded by the court's interpretation of comment one to § 42a-4-401. According to the comment, an instrument containing "an unauthorized endorsement" is not properly payable. The comment neither addresses the payability of instruments containing more than one endorsement nor distinguishes between instruments that are jointly payable and those that are payable in the alternative. Indeed, if the comment does refer to multiple endorsements as the court's interpretation suggests, it would likely conflict with § 42a-3-205 (d) on anomalous endorsements. The court's reasoning that comment one to § 42a-4-401 applies to the present case because the unauthorized signatures constitute endorsements is unavailing. Section 42a-3-205 (d) on anomalous endorsements applies specifically to endorsements. In order to give effect to and to harmonize § 42a-3-205 (d) and comment one to § 42a-4-401, which pertain to the same subject matter, we must construe the more general comment one to § 42a-4-401 to be subordinated to the more specific provisions of § 42a-3-205 (d). See *State* v. *State Employees' Review Board,* supra, 239 Conn. 653. Accordingly, we do not interpret comment one to § 42a-4-401 to pertain to items with multiple endorsements when the instrument is payable in the alternative and one endorsement is valid.

The plaintiff relies on *Perley* v. *Glastonbury Bank & Trust Co.,* 170 Conn. 691, 368 A.2d 149 (1976), the only case in which our Supreme Court has addressed unauthorized endorsements. That case is, however, distin-

guishable from the present case. In *Perley*, the court held that a negotiable instrument that was payable to two payees was not properly negotiable if one of the endorsement signatures was unauthorized. Id., 695–96. Unlike the present case, *Perley* determined the principle that governs if the instrument is *jointly* payable. Therefore, the validity of the unauthorized signature was essential to the transferability of the instrument. In the present case, by contrast, we are addressing the legal consequences of an instrument that was payable in the alternative.

Because our courts have not previously addressed unauthorized endorsements on a check payable *in the alternative*, we look to other jurisdictions for guidance. Other courts consistently have held that, despite the forgery of another payee's endorsement, one valid endorsement is sufficient to negotiate such a check. See *Danco, Inc.* v. *Commerce Bank/Shore*, 290 N.J. Super. 211, 675 A.2d 663 (1996); *Kinzig* v. *First Fidelity Bank, N.A.*, 277 N.J. Super. 255, 649 A.2d 634 (1994); *L. B. Smith, Inc.* v. *Banker's Trust Co. of Western New York*, 80 App. Div. 2d 496, 439 N.Y.S.2d 543 (1981), aff'd, 55 N.Y.2d 942, 434 N.E.2d 261, 449 N.Y.S.2d 192 (1982); *J. R. Simplot, Inc.* v. *Knight*, 139 Wash. 2d 534, 988 P.2d 955 (1999).

In the statutory scheme of articles three and four of title 42a of the General Statutes, an instrument that is ambiguous about the relationship between designated payees is an instrument that is payable in the alternative. General Statutes § 42a-3-110 (d). Thus, in this case, the bank properly could honor the check presented by Avants. Forged endorsements do not affect this result because any endorsement by a nonholder is nothing more than an anomalous endorsement. General Statutes § 42a-3-205 (d). An anomalous endorsement does not deprive a payor bank of authority to pay the instrument if it is properly endorsed by a holder. This is the

position for which the defendant argues. The judgment, therefore, must be reversed.

The plaintiff asserts alternate grounds for affirming the judgment of the trial court. The plaintiff argues that (1) the trial court's judgment is consistent with the warranty provisions of articles three and four of title 42a of the General Statutes and (2) the settlement was *jointly* payable, rather than payable in the alternative as the trial court concluded, which would have made the check not properly payable. We are not persuaded.

The plaintiff first argues that the court's judgment is consistent with the policies of the warranty provisions set out in articles three and four of title 42a of the General Statutes. See General Statutes §§ 42a-3-417, 42a-3-416, 42a-4-207 and 42a-4-208. The plaintiff asserts that these warranty provisions allow the defendant to recover from the presenting bank that was first in the chain of transfers of the check. The plaintiff's claim is unpersuasive because these warranty provisions provide recourse for payments that are unauthorized. In the present case, we have concluded the opposite and these warranty provisions are, therefore, irrelevant.

In support of its second argument that the check was jointly payable, the plaintiff relies on the "usage of trade" standard set out in General Statutes § 42a-1-205. According to that standard, "usage of trade in the vocation or trade in which [the parties] are engaged or of which they are or should be aware give[s] particular meaning to and supplement[s] or qualif[ies] terms of an agreement." General Statutes § 42a-1-205 (3). "Usage of trade" is defined as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." General Statutes § 42a-1-205 (2). The plaintiff argues that the "usage of trade" in the insurance indus-

try is to issue jointly payable settlement checks and that the defendant, although in the banking industry, should have been aware of that customary practice.

The plaintiff's reliance on the "usage of trade" standard is misplaced. The standard applies specifically to a usage of trade "in the vocation or trade in which [the parties] are engaged or of which they are or should be aware . . . ." General Statutes § 42a-1-205 (3). Here, the parties are not engaged in the same vocation or trade. The plaintiff argues that the defendant, which is in the banking industry, should have been aware of a custom of the insurance industry. The plaintiff offers no evidentiary support for applying the usage of trade standard so broadly. There was no other evidence at trial to support the plaintiff's claim that the check was jointly payable.

The plaintiff's alternative argument fails because, at best, the check is ambiguous as to whether it was payable in the alternative or jointly payable. In those circumstances, under § 42a-3-110 (d), as the trial court held, the check must be treated as payable in the alternative.[7]

In the absence of precedent in our jurisdiction or other persuasive authority to the contrary, we conclude that the plain language of §§ 42a-3-110 (d) and 42a-3-205 (d) is the most appropriate basis for determining the negotiability of the settlement check payable to more than one payee. Once the trial court concluded that the check was payable in the alternative, Avants' endorsement was sufficient to make the check properly payable. We are unpersuaded that unauthorized purported signatures of alternative payees invalidate an endorsement that is otherwise proper. The defendant is entitled to judgment as a matter of law.

___

[7] See footnote 2.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.