[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT, NOS. 115.00, 117.00
The plaintiff Envirotech of Fairfield County, Inc. (Envirotech) has sued the defendants for monies allegedly due and owing on written contracts for removal of an oil tank from, and remediation of an oil leakage on, the defendants' residential property in Stamford. The defendants have answered, set forth three special defenses, two of which allege that Envirotech violated the Home Improvement Act, General Statues § 20-418 et seq (HIA) and asserted three counterclaims alleging breach of contract, violation of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110 et seq. (CUTPA) and interference with business expectancy.
The defendants have now moved for summary judgment dismissing the plaintiffs amended complaint on the grounds that Envirotech was not registered as a home improvement contractor pursuant to General Statutes § 20-420 and that the contracts between Envirotech and defendant George Bartholomew did not comply with the HIA contract requirements of General Statutes § 20-429, and are therefore unenforceable. The plaintiff, in turn, has moved for summary judgment dismissing the defendants' special defenses based on the HIA on the ground that HIA does not apply to this case and dismissing the defendants' three counterclaims.
The standards for the grant or denial of summary judgment are well known, and the court will summarize them only briefly. A motion for summary judgment shall be granted when the evidence shows that there is no genuine issue as to any fact material to the case, and the party seeking judgment is legally entitled to it. Practice Book § 17-49.
 FACTS
In this case the facts brought before the court are sparse. The defendant, Bartholomew, entered into two written agreements with CT Page 11000 Envirotech. The first contract dealt with the removal of an in ground fuel oil tank from the defendants' real property. The second contract provided for the remediation of contamination in the soil arising from a leak in the tank that was removed. This second contract called for Envirotech to submit the costs associated with the remediation to the Department of Environmental Protection for reimbursement. Envirotech alleged that it was owed in excess of $7,500 for work performed under these contracts.
Envirotech does not take issue with the defendants' contention that neither of the contracts meets the requirements for a home improvement contract as set forth in General Statues § 20-429. Among other things the contracts do not contain the required notices of cancellation rights. Envirotech has also admitted that it has not registered as a home improvement contractor under General Statues § 20-420. Envirotech asserts, and it is not contested, that it is a registered contractor pursuant to General Statutes § 22a-449k.
 DISCUSSION
The plaintiff contends that it is exempt from the reach of HIA because it is a registered contractor under statutes administered by the Connecticut Department of Environmental Protection (DEP). Resolution of this issue involves an analysis of the interplay, overlap, and perhaps, conflict between two sets of statutory provisions within the General Statutes. The first set is the aforementioned HIA which is administered by the Department of Consumer Protection. This statute requires the registration of all contractors who perform home improvements, as defined, sets forth stringent requirements for contracts covering home improvements, and invalidates and makes unenforceable many of the contracts which do not meet the statutory criteria. The HIA has been broadly construed by our Supreme Court which has noted that the legislation was passed "for the protection of the public"; BarrettBuilders v. Miller, 215 Conn. 316, 323 (1990); and that a fundamental objective of courts in construing this legislation is to "give effect to the apparent intent of the legislature". Rizzo Pool Co. v. Del Grosso,232 Conn. 666, 676 (1995).
The second set of statutory provisions is found in chapter 446k of the General Statutes, the Connecticut Water Pollution Control Act, as amended, which is generally administered by DEP. Among other things, this chapter provides that the Commissioner of Environmental Protection is charged with controlling, removing and mitigating spillage or seepage of oil, petroleum and chemical liquids upon any land in Connecticut. General Statutes § 22a-449. In connection with this responsibility, the CT Page 11001 legislature created certain fund accounts to assist in paying for the clean up and remediation of contamination from underground oil spills including a "residential underground heating oil storage tank system clean-up subaccount" which was funded by proceeds of specially authorized bonds. See General Statutes § 22a-449c (b); PA 00-167, sec 51. The Commissioner of Environmental Protection is required to set up procedures for making reimbursement payments from the subaccount. General Statutes § 22a-449e. Pursuant to General Statutes § 22a-449k anybody who removes or replaces a residential underground heating oil tank when the removal involves remediation of contaminated soil or water, the cost of which will be paid out of the subaccount, must be a registered contractor. To become registered involves a showing of financial soundness and evidence of skill and experience in tank removal. Id. The law also provides that several specific provisions must be in the contract between the registered contractor and the home owner if the costs of removal and remediation are eligible for reimbursement from the subaccount. General Statutes § 22a-4491 (c). The registered contractor is also required to report certain conditions to the Commissioner. General Statutes § 22a-4491 (b). Lastly, there are very specific statutory operating criteria which a registered contractor must follow pertaining to the installation of underground oil tanks and soil remediation. General Statutes § 22a-449m. Our Supreme Court has said that the state environmental laws, of which chapter 446k is unquestionably a part, are remedial in nature and should be construed liberally to accomplish their purpose. Starr v. Commissioner ofEnvironmental Protection, 226 Conn. 358, 382 (1993).
Chapter 449k, specifically General Statutes §§ 22a-449a through 449m, clearly applies to Envirotech's activities, i.e. the removal of underground oil tanks and remediation of oil spillage. In fact, the defendants allege in their third special defense that Envirotech did not submit the proper costs to DEP for reimbursement. The issue before the court is whether the HIA also applies to Envirotech's work for the defendants. Envirotech contends that its registration under Section22a-449k exempts it from having to comply with HIA because HIA does not apply to ". . . any person holding a professional or occupational license issued pursuant to the general statutes. . ." General Statutes §20-428. Bartholomew argues that Envirotech's registration under Section 22a-449k does not constitute an occupational or professional license and points to the differences between a "registration" and a "license" as defined in General Statutes § 21a-9
(d).[1] The court does not find this argument persuasive. First, the definitions contained in Section 21a-9
(d) do not apply to HIA which is Chapter 400 of the General Statutes, not a chapter specified in the definitional statute. Second, the major difference between the definition of license and registration is the CT Page 11002 requirement that a license requires some evidence of competence whereas a registration does not. As pointed out above, the 22a-449k registration provision requires prior experience in tank removal.
This court has only found one case that deals with the relationship between the environmental pollution statutes and HIA. In AmericanEnvironmental Technologies, Inc. v. Bray, judicial district of Stamford/Norwalk at Stamford, CV 93-013 1928 (March 8, 1995, Lewis,J.) (13 Conn.L.Rptr. 596) the court, pursuant to what is now chapter 19 of the Practice Book, approved the findings of fact and conclusions of law made by an attorney trial referee (ATR). The ATR found that an environmental clean up company was licensed by the Department of Environmental Protection to clean up oil spills and remove hazardous waste pursuant to General Statutes § 22a-454 and concluded that the license constituted an occupational or professional license, making the clean-up company exempt from HIA. It should be noted that the "license" referred to in the case was clearly not the same as the registration under Section 22a-449k. Additionally, this court's review of Section 22a-454 indicates that it does not provide for granting of licenses, but of permits. Therefore, the precedential value of AmericanEnvironmental Technologies on that point is marginal. On balance this court concludes that Envirotech's registration under Section22a-449k does not constitute an occupational or professional license. While the registration does evince a level of training and experience, it does not rise to the level of an architect's or plumber's license which the court believes is the type of license envisioned by the HIA. See e.g. Santa Fuel, Inc. v.Varga, judicial district of Fairfield at Bridgeport, CV00 374050 (February 13, 2002, Thim, J.); Romanello v. Unico, judicial district of Fairfield at Bridgeport, CV 97 0343432 (June 2, 2000, Moran, J.).
Therefore, the court must now turn to a broader and perhaps more complex issue: whether HIA should be interpreted to cover fuel tank removal and soil remediation. HIA defines a "home improvement" as including, but not limited to "the repair, replacement . . . rehabilitation . . . of any land or building . . . used as a private residence." General Statutes § 20-419 (a).(4). As a linguistic matter the remediation of soil, which includes removing oil from, or replacing, soil could fall within the scope of replacing or rehabilitating land. On the other hand the statutory definition of home improvement includes specific items such as driveways, swimming pools, solar energy systems, insulation and waterproofing without any mention of tank removal or soil remediation.
However, mere linguistics does not necessarily provide the complete answer. It is the job of a court to avoid unnecessary conflict within a CT Page 11003 statutory scheme and to reconcile separate parts of the statutes to reach a reasonable overall interpretation. See Red Rooster Construction Co. v.River Associates, Inc., 224 Conn. 563, 570 (1993). In construing statutes that potentially conflict a court should avoid interpretations which create a genuine conflict and should seek to harmonize the law by adopting interpretations, if possible, to avoid conflicts between the Statutes. See Stern v. Allied Van Lines, Inc., 246 Conn. 170, 179
(1998). One well recognized approach to achieve this goal is to subordinate the more general legislation to the statute which deals with a specific subject. See Coregis Ins. Co. v. Fleet National Bank,68 Conn. App. 716, 723 (2002.) Additionally, it is a well recognized rule of statutory construction that the legislature is presumed to know the existing statutes and the judicial interpretation of them. Mack v.Saars, 150 Conn. 290, 298 (1963).
The court determines that there is a potential for conflict and overlap between HIA and chapter 446k of the General Statutes, particularly in possibly requiring a contractor to register with two different state agencies in order to do a single type of job and in likely requiring the use of different contractual forms. For instance, a contractor registered under chapter 446k must use a contract form prescribed by the Commission of Environmental Protection and which identifies all costs that are likely not to be reimbursed by DEP and must provide notice of the homeowner's right to cancel the contract within three days of signing. General Statues § 22a-4491 (c)(1). Under HIA a registered home improvement contractor's contract with a homeowner must contain elements set forth in General Statutes § 20-429 which inter alia provides that the Commissioner of Consumer Protection may, by regulation, dispense with certain requirements and calls for a notice of the right to cancel within three business days.
More importantly, in this court's view, is the context in which HIA and chapter 446k coexist. Unlike HIA, the provisions of Chapter 446k relating to registered contractors are very specific as to how the contractors are to perform their job duties. See General Statutes § 22a-449m.[2]
These operational standards evidence a legislative intent to place the regulation and supervision of oil tank removal and replacement and soil remediation squarely under the supervision of the Department of Environmental Protection.
A significant portion of the statutes now codified in chapter 446k at Sections 22a-449 through 22a-449m were enacted very recently. See PA 99-269; PA 00-167; PA 00-201; PA 01-09, June Special Session. The CT Page 11004 legislature certainly was well aware of the existence of HIA yet proceeded to add the provisions noted above concerning the registration of oil tank removal contractors (PA 99-269, Sections 2, 6; PA 00-201, Sections 5, 8) the information required in a contract (PA 99-269, Sections 3, 6; PA 00-201, Sections 6, 8) and the standards for soil remediation and oil tank replacement (PA 00-201, Section 7, 8) without a single reference to HIA or the authority of the Department of Consumer Protection. This may be interpreted as a legislative understanding that HIA does not apply to the activities of in ground fuel tank removal and soil remediation based on acceptance and recognition (confirmed by the research of this court and the parties) that there is no case directly holding that the HIA applies to these activities. In Santa Fuel v.Varga, supra, the court assumed that tank removal and soil remediation was covered by HIA but ruled that the contractor, which held heating, cooling, plumbing and piping licenses, was exempt from HIA by virtue of the professional and occupational license provision, General Statute § 20-428. In American Environmental Technologies Inc. v. Bray, supra, the court concluded that
 It does not follow that a company licensed by the DEP to clean up hazardous waste and haul it away suddenly becomes a home improvement contractor because one aspect of the job is generally considered landscaping.
The court concludes that the legislature did not intend to require tank removal and soil remediation work to be under the purview and strictures of both HIA and chapter 446k. Therefore, the court holds that the already highly regulated activities of Envirotech relevant to this case do not fall within the meaning of "home improvement" as defined in HIA.
 CONCLUSION
For the reasons stated above, the defendants' motion for summary judgment on the complaint is denied. The HIA is not a bar to the plaintiffs contractual claim.
While there is authority that a party may not move for summary judgment dismissing a special defense, DuBourg v. Osborn, judicial district of Litchfield, CV 940065070, (July 5, 1995, Pickett, J.) there is contrary and growing precedent that such a motion is appropriate. E.g. LaSalleNational Bank v. Shook, 67 Conn. App. 93 (2001); Balogh v. City ofShelton, judicial district of Ansonia/Milford at Milford, CV 99 0067521 (March 18, 2002, Alander, J.); Memoli v. DeBrizzi Associates, judicial district of Fairfield at Bridgeport, CV 95 0319474 (February 11, 2002, CT Page 11005 Gallagher, J.). This court chooses to follow the latter cases and grants the plaintiffs motion to strike the defendants' first and second special defenses asserting HIA defenses.
The plaintiff has provided no basis for its motion to dismiss the counterclaims, and it is denied.
ADAMS, J.